JOHN NELLIGAR, Claimant, *v.* STATE OF NEW YORK.

Claim No. 16215.

Court of Claims, January, 1923.

**Claims against state — negligence — resisting arrest made by member of New York Guard in time of war — shooting by guard — contributory negligence — non-liability of state — Laws of 1919, chapter 575.**

On May 9, 1918, between one and two o'clock in the morning claimant in an intoxicated condition, while crossing a railroad bridge which at the time was under guard, was put under arrest by a corporal of the New York Guard, who also was intoxicated. Claimant several times tried to pass by the corporal but was repulsed. Finally claimant stated that he had a railroad pass and had a right to cross the bridge. As he reached for his pass in his inside coat pocket he was shot by the corporal of the guard and seriously injured.

Claimant presented his claim under an Enabling Act (Laws of 1919, chap. 575) which authorized the hearing and audit of the claim, " and if the court finds that such injuries were so sustained and were occasioned by the willful or careless act of such member of the New York guard, and that the claimant was free from contributory negligence, damages therefor shall constitute a legal and valid claim against the state   *   *   *."

*Held*, that while the shooting was wholly unjustifiable, yet claimant was not without fault and his willful act in resisting arrest constituted negligence, and as the court cannot find that claimant was free from contributory negligence the claim is disallowed.

CLAIM for injuries caused by militiaman.

*Charles M. Friend (B. P. Wheat* and *Charles B. Sullivan,* of counsel), for claimant.

*Charles D. Newton,* attorney-general *(Glenn A. Frank,* of counsel), for state.

CORWIN, J.   On the morning of May 9, 1918, between one and two o'clock, claimant and one Sheeran left Rensselaer, where they had spent the evening, and started to return to Albany by way of the Maiden Lane bridge which crosses the Hudson river from its east shore at Rensselaer to its west shore at the foot of Maiden Lane in Albany.   Both were intoxicated.   They proceeded along the footpath on the north side of the bridge to about the recreation pier, where they stopped and engaged in an argument.   They were then and there accosted by one Moratti, a member of the New York Guard, assigned to guard that portion of the bridge, who told them to keep on moving or he would place them under arrest. After an altercation between the claimant and Moratti, during which claimant endeavored to climb over the railing from the footpath onto the railroad tracks, claimant and his companion proceeded westerly toward Albany, closely followed by Moratti. As the three approached the westerly end of Moratti's post, near

Court of Claims, January, 1923.                    [Vol. 120

a toll shanty and about 100 feet east of the westerly end of the bridge, Moratti called to the corporal of the guard, one George P. Maney, who was near this point but under the bridge. Maney ascended the stairs onto the bridge and came running toward the three men. Maney at the time was also intoxicated. Upon hearing the report of Moratti, Maney told claimant and his companion that they were under arrest, and ordered them back to the sentry box, about twenty-five feet east of where they were standing. Instead of obeying, claimant tried to push past Maney who struck him on the chin with the butt of his gun, driving him back a few paces. Again claimant tried to push past Maney and was repelled in the same manner. A third time claimant tried to get by Maney, who this time struck him a slashing blow in the face with his bayonet, cutting open his cheek. Claimant then retreated a few steps and said that he had a right to cross the bridge and had a railroad pass, at the same time reaching with his left hand for his pass which was in a wallet in his inside coat pocket over his right breast. As he reached for his pass Maney intentionally shot him, the bullet passing through claimant's left leg about four inches above the knee and seriously injuring him.

We regard the act of Maney under the circumstances as a vicious and brutal assault. Claimant, when he was shot, was standing still and was not at that time attempting to escape. There was an armed guard before and behind him, the footpath was only five feet wide and on either side of it was a solid metal fence from five feet to seven feet high. The futile efforts previously made by claimant to pass Maney had been easily defeated by the latter and there was no attempt to escape on the part of the claimant sufficient to justify the shooting. Furthermore, the crime which claimant had committed was but a misdemeanor and not a felony and Maney under these circumstances would not have been justified in shooting him even could he not otherwise have prevented claimant's escape. Nor was Maney justified, in view of what claimant said to him, in believing that claimant was about to draw a weapon when he reached with his left hand to his inside coat pocket for his pass. But even if he did so believe, he had a rifle trained on claimant, he could have pressed the trigger in an infinitesimal part of a second, and would have had ample time to shoot after seeing the weapon had one been drawn. We have no difficulty in finding that the shooting was without sufficient cause or provocation and wholly unjustifiable.

Nevertheless, claimant was not without fault which, while it did not justify the assault, certainly contributed to it. In view of the intoxicated condition and disorderly conduct of claimant

and his companion, Maney was within his rights in placing them under arrest; and it was claimant's duty to submit to such arrest. He failed in that duty when he disobeyed and forcibly resisted Maney's order to return to the sentry box. We cannot conceive that any prudent man in time of war would so disobey and so resist an armed guard who had placed him under arrest; and there can be no doubt but that, save for such disobedience and such resistance, the shooting would not have occurred.

The question naturally arises whether this fault, being willful, constitutes negligence. It has been said that the terms "willfulness" and "negligence" are incompatible, the former implying purpose while the latter implies inadvertence. Nevertheless, a willful act may constitute negligence in a legal sense; and where a person, through his willful act, exposes himself to the fulfillment of an implied threat, such act may constitute negligence contributing to the result of the execution of that threat, and we so hold in the present instance.

It remains to be determined whether, under the language of the enabling act, such negligence on the part of the claimant precludes recovery. The language of the act, chapter 575 of the Laws of 1919, so far as the same is applicable to the question before us, is as follows: " The court of claims is hereby authorized to hear, audit and determine the claim of John Nelligar against the state for personal injuries alleged to have been sustained by him on the ninth day of May, nineteen hundred and eighteen, at the hands of a member of the New York guard, on or in the immediate vicinity of the bridge across the Hudson river leading from the foot of Maiden Lane in the city of Albany to the city of Rensselaer in the state of New York, by reason of being shot; without cause or provocation and unjustifiably, by such guardsman while such guardsman was in the actual performance of his duty as a member of such guard; and if the court finds that such injuries were so sustained and were occasioned by the willful or careless act of such member of the New York guard, and that the claimant was free from contributory negligence, damages therefor shall constitute a legal and valid claim against the state, and the court may award to and render judgment for the claimant for such sum as may be just and equitable, provided the claim herein is filed with the court of claims within six months after this act takes effect."

It will be seen that in addition to finding that the shooting was without cause or provocation and unjustifiable and that the injuries of claimant were occasioned by the willful or careless act of the guardsman, the court before making an award must also find that the claimant was free from contributory negligence. Counsel for the claimant contends that it would be necessary to

find the claimant free from contributory negligence only in case it were found that the shooting was occasioned by the careless act of the guardsman; and that if it was occasioned by his willful act such finding would be unnecessary. We do not so construe the act. The act does not either specifically or by reasonable inference so state and statutes of this character must be strictly construed. *Smith* v. *State of New York*, 227 N. Y. 405, 410.

It is true that contributory negligence is no defense to a cause of action founded on a willful or wanton wrong. *Magar* v. *Hammond*, 183 N. Y. 387, 391. But no cause of action exists in favor of the claimant against the state save by virtue of the enabling act. The state is immune from liability for the willful and wanton as well as the negligent acts of its servants and employees, and when such immunity is waived by legislative enactment a new, distinct and special cause of action is created which may or may not conform to similar causes of actions existing under other circumstances. If in creating a cause of action in favor of the claimant based upon the willful wrong of the state's servant, the legislature saw fit to waive the state's immunity only upon condition that the claimant was free from negligence contributing to the result, that was something quite within its power and discretion, notwithstanding the fact that to other causes of action of similar nature contributory negligence constitutes no defense.

In our opinion that is what the legislature did by the act in question. We cannot read the act in any other light than as requiring us, before making an award, to find that claimant was free from contributory negligence even though his injuries resulted from the willful act of the guardsman; nor can we find such freedom from contributory negligence in view of claimant's disobedience and resistance under the circumstances.

It follows that the claim should be dismissed.

SMITH, J., concurs.

Claim dismissed.