JOHN NELLIGAR, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

Third Department, June 19, 1923.

State — claim against State for injuries — claimant was shot by member of New York Guard — shooting was done intentionally and without cause or provocation within meaning of Enabling Act, Laws of 1919, chap. 575 — claimant was not guilty of contributory negligence — award made.

The claimant was shot in 1918 by a member of the New York Guard while he was crossing the Maiden Lane bridge over the Hudson river between Rensselaer and Albany. The Enabling Act, chapter 575 of the Laws of 1919, provided that the Court of Claims might render an award if it found that the injuries were sustained by reason of claimant being shot by a member of the New York Guard " without cause or provocation and unjustifiably " and if said injuries " were occasioned by the willful and careless act of such member of the New York Guard, and that the claimant was free from contributory negligence." It appeared that the claimant, who was a railroad engineer, was passing over said bridge at the time he was shot; that he and his companion were both intoxicated; that they were stopped by a member of the guard who told them to keep on going and who followed them to a point near the westerly end of the bridge where he signalled a corporal of the guard. The corporal, who was intoxicated, placed the claimant under arrest, struck him with his gun, cut his face with his bayonet and when the claimant put his hand into his pocket to secure his railroad pass, the corporal shot him in the leg. The corporal was a convicted criminal and had previously made a threat to " get " any one who did not stop on the night in question.

Held, that the finding by the Court of Claims that the corporal " intentionally shot the claimant " without cause or provocation and without justification, is supported by the facts;

That the claimant was not guilty of contributory negligence, as found by the Court of Claims, and, therefore, was entitled to an award under the provisions of the Enabling Act.

The assault upon the claimant having been intentional, without provocation or justification, the negligence of the claimant, if any, was antecedent and did not contribute to the willful assault which was made upon his person. Moreover, the statute does not mean that negligence on the part of the claimant would bar a recovery for damages resulting from an assault that was willfully inflicted.

APPEAL by the claimant, John Nelligar, from a judgment of the Court of Claims in favor of the defendant, entered in the office of the clerk of said court on the 18th day of January, 1923, dismissing the claim upon the merits.

*Charles M. Friend* [*Charles B. Sullivan* and *Benjamin P. Wheat* of counsel], for the appellant.

*Carl Sherman, Attorney-General* [*W. J. Wetherbee, Deputy Attorney-General*, of counsel], for the respondent.

H. T. KELLOGG, Acting P. J.:

This claim was made under chapter 575 of the Laws of 1919. That act conferred jurisdiction on the Court of Claims to hear the claim made by the claimant against the State for personal injuries sustained by him on the 9th day of May, 1918, at the hands of a member of the New York Guard by reason of being shot by him " without cause or provocation and unjustifiably " in the vicinity of the Hudson river bridge between the cities of Albany and Rensselaer. It provided that if the court found that such injuries were so sustained " and were occasioned by the willful or careless act of such member of the New York Guard, and that the claimant was free from contributory negligence," the court might render an award of damages therefor.

The Court of Claims, after a trial of the claim, made findings upon sufficient evidence which established the facts of the claim to be as follows: On May 9, 1918, the claimant, with a companion named George Sheeran, left Rensselaer to return to Albany by way of the Maiden Lane bridge. This bridge, crossing the Hudson river, connects Rensselaer with the city of Albany and carries the main tracks of the New York Central railroad. The claimant and Sheeran were both intoxicated. They proceeded along the foot path on the north side of the bridge to a point 300 feet easterly of its Albany end. Here they stopped and engaged in an argument. They were then accosted by one Moratti, a member of the New York Guard, who told them to keep on going or he would put them under arrest. The claimant endeavored to climb over the railing separating the foot path from the railroad tracks, but

finally desisted, and the two men continued on their journey across the bridge closely followed by Moratti. When they reached a point about 100 feet from the westerly end of the bridge Moratti signaled Corporal George P. Maney. Maney came running up to the claimant, told him to get back and declared that he and Sheeran were under arrest. The claimant continued to advance and Maney struck him under the jaw with the butt of his gun. Maney later struck claimant a slashing blow in the face with his bayonet, cutting his cheek open. The claimant then stepped back a few feet, told Maney that he had a right to cross the bridge and had a railroad pass, and reached with his left hand for the pass which was in his inside coat pocket on the right side. Maney, who was intoxicated, then shot the claimant through the leg. The bullet passed through the leg about four inches above the left knee, and shattered the bone. The claimant was confined to a hospital for more than four months and his leg was kept in a cast for seventy-seven days. As a result of the assault the claimant's leg has been shortened about two inches, his left knee joint has been made stiff and he has been unable to obtain occupation as a locomotive engineer or fireman, by which occupation he had formerly lived. In addition to the facts thus found it may be well to note that according to the undisputed proof Maney was a convicted criminal; that he had been committed to an industrial school at the age of thirteen for truancy; that he had been convicted in the year 1917 of the crime of burglary in the third degree; that sentence for this crime was suspended; that the suspension of this sentence was revoked in February, 1919, after the assault in question, because of his commission, for the second time, of the crime of burglary in the third degree; that he was sent to the Elmira Reformatory. It may also be noted that upon the evening in question, some time prior to the assault, Maney had told his fellow guardsmen that " he would get the first son of a bitch that didn't stop that night; " that neither he nor Moratti aided the claimant after he was shot, but left him bleeding on the walk; that while the claimant was so lying on the walk another pedestrian came to where he lay; that this pedestrian asked the claimant what the matter was; that Maney pointed his rifle at him and said: " You walk on, you son of a bitch, or I'll put a bullet through you." The entire record indicates that Maney was not merely a criminal but a brutal character, who upon the night in question needed no excuse but his own desire to shoot and bayonet innocent people. We think that the Court of Claims was fully justified in finding as it did that Maney " intentionally shot the claimant " and that the shooting was " without cause or provocation and

unjustifiable." (See 120 Misc. Rep. 139.) In view of these findings we cannot agree with the subsequent finding made that the claimant upon the occasion in question was guilty of contributory negligence and, therefore, was not, under the provisions of the statute, entitled to an award. The assault upon the claimant having been intentional, without provocation and unjustifiable, the negligence of the claimant, if any, was antecedent and a thing apart; it did not contribute to the willful assault which was made upon his person. Moreover, we do not construe the statute to mean that negligence on the part of the claimant would bar a recovery for damages resulting from an assault which was willfully inflicted. We take it that contributory negligence would be a bar under the statute to a recovery for injuries occasioned only by carelessness. We conclude, therefore, that the claimant is entitled to an award of $10,014.40, the sum at which the Court of Claims measured the damages sustained.

The judgment should be reversed, with costs, and a judgment directed, with costs in favor of the claimant in the sum of $10,014.40. The court should disapprove finding 25, and find that the claimant was not guilty of contributory negligence.

VAN KIRK, HINMAN and HASBROUCK, JJ., concur.

Judgment reversed on the law and facts, with costs, and a judgment directed, with costs, in favor of the claimant in the sum of $10,014.40. The court disapproves finding of fact numbered 25, and finds that the claimant was not guilty of contributory negligence.