ANTHONY O'CONNOR et al., Appellants, v G & R PACKING CO., Respondent.

Second Department, April 7, 1980

## APPEARANCES OF COUNSEL

*Lipsig, Sullivan, Mollen & Liapakis, P. C. (Emilio Nunez, Scott Mollen* and *Pamela Anagnos Liapakis* of counsel), for appellants.

*Griffin, Scully & Savona (John F. Scully, Joseph F. X. Savona* and *William G. Kelly* of counsel), for respondent.

## OPINION OF THE COURT

O'CONNOR, J.

In 1967 Anthony O'Connor (hereafter plaintiff) sustained grave injuries while playing atop a freight car parked in a Brooklyn railroad yard. After the dismissal of the complaints in consolidated negligence actions against several railroad companies and other defendants to recover damages for those injuries, plaintiff and his father, John O'Connor, commenced the instant suit. They sought to recover damages for the same injuries from G & R Packing Co., charging the defendant with negligent maintenance of the entrance to its plant, which adjoins and leads into the railroad yard. The defendant's motion to dismiss the complaint has been granted on the ground of collateral estoppel. The central issue on appeal is whether the dismissal of the complaints in the prior actions entailed a necessary finding of contributory negligence which precludes litigation of the negligence claim in the instant suit.

The evidence adduced at the December, 1973 trial of the earlier actions revealed the following: On the afternoon of February 11, 1967 plaintiff, then a 16-year-old minor, exited the BMT subway station on 8th Avenue and 62nd Street in Brooklyn accompanied by five other boys. The group entered a gate and walked down a hill on a road which traversed property used by defendant, G & R Packing Company, for its business operations and leading directly into the Bay Ridge railroad yard. The yard extends from 11th Avenue to the Brooklyn waterfront and, at the time in question, was utilized as a "storage drag" in which freight cars destined for New England were parked in trains of some 20 to 110 cars and later "floated", or ferried, across New York harbor; trains arriving by ferry were dispatched from the yard into the Pennsylvania Railroad system. Plaintiff and his companions

were having a snowball fight as they approached the end of one of the trains parked in the yard, and plaintiff scaled a ladder on the end of a freight car and stood on top. Another boy started up the ladder behind him. Catenary poles supported overhead high-tension wires used to deliver 11,000 volts of electrical power to the trains; plaintiff conceded that, as he stood atop the box car, the lowest wire was "[h]igher or just equal to the top of [his] head". Signs warning of the dangerously high voltage were posted on each pole supporting the overhead wires, but plaintiff professed that he never saw them. He remembered standing on the freight car only long enough to throw "a few snowballs". As he did so his hand came into contact with an overhead wire, and he sustained massive injuries.

The complaints in the actions against various railroads and other defendants alleged, in substance, that those defendants negligently, recklessly or willfully caused plaintiff's injuries by failing, *inter alia,* to maintain proper fences around the railroad yard, to post guards or otherwise warn plaintiff of danger, to operate the high voltage lines with due regard to safety and to prevent the plaintiff and other children "from climbing on or about the freight cars which were laying *[sic]* idle". G & R Packing Company was not joined as a party defendant in those actions. In addition to the afore-mentioned events, the trial evidence established that there were two entrances to the Bay Ridge railroad yard in the vicinity of the accident, one on 8th Avenue for the switchmen and another through G & R's premises. There was a warning sign on the 8th Avenue entrance but none at the G & R entrance. Other than the signs posted on each catenary pole, there were no warning signs in the railroad yard, which was secured between 6th and 8th Avenues by a five-foot-high chain link fence. The Bay Ridge yardmaster testified that prior accidents had occurred in the yard near the place where plaintiff was injured, but he was not permitted to testify as to the frequency of such accidents or as to whether children were involved. The yardmaster recalled seeing children at play in the yard prior to the day of plaintiff's accident, but he did not determine how the children had gained entrance to the railroad property. There were no railroad police in the yard at the time of plaintiff's accident, but the railroad police did patrol the area by making "spot checks". A fair reading of the trial evidence demonstrates that upon receiving word on the

afternoon in question that children were playing on railroad cars, the railroad's power director's office took immediate steps to cut off power in the Bay Ridge yard.

Plaintiff also testified that at the time of the accident he was familiar with the operation of trains and tracks in another railyard located near his home. He further stated that he knew that it was dangerous to touch a wire if it carried electricity and that he would not place his finger in an electrical outlet. His father, who in both the prior suits and the present action joined his own claims for loss of services and medical expenses, testified that his son had suffered from hearing and speech impediments as a child and had experienced academic problems throughout grammar school and high school.

At the close of evidence in the prior trial defendants renewed a motion to dismiss the complaints and also sought a directed verdict in their favor, arguing that plaintiff had been a trespasser on railroad property and that the evidence failed to demonstrate a breach of any legal duty by the railroads. Plaintiffs, in opposition, contended that the accident was foreseeable, that there was no proof of trespass and that even if the infant was a trespasser, the evidence raised questions concerning the adequacy of defendants' efforts to warn children of the hazards associated with the "inherently dangerous articles" maintained on the railroad property. Plaintiffs further contended that there was a jury question as to whether railroad personnel knew that children were present in the railyard just prior to the accident and failed to disconnect the power in time to prevent the accident, raising the possibility that defendants could be found liable on a last clear chance theory.

In an oral decision announced from the bench, Mr. Justice SAMANSKY dismissed the complaints and denied all other motions as academic, concluding that "the plaintiffs as a matter of law failed to establish liability on the part of the defendants on the plaintiff's theory of negligence as well as the theory of the last clear chance." The court found the infant plaintiff to be a trespasser under both common law and statute (see Railroad Law, § 83; former Penal Law, § 1990, subd 4; cf. Penal Law, §§ 140.05; 140.10; 165.15, subd 3). Furthermore, defendants had not breached the duty owed to plaintiff which, under the legal principles then prevailing,

"was to refrain from committing any wilful or wanton injury". Justice SAMANSKY then stated:

"The infant plaintiff not only disobeyed these statutes which were enacted for the benefit of the public but also deliberately and needlessly exposed himself to a known danger by climbing to the top of a freight car and moving about in a close proximity to live high tension wires.

"There are many cases which hold that under circumstances similar to those of the instant action, there is no liability on the part of the railroad. In some of these cases, the plaintiff was several years younger than the plaintiff herein.

"See *Lederman v New York City Transit Authority*, 36 Misc. 2nd 571 * * * affirmed 21 App. Div. 2nd, 751; appeal denied to the Court of Appeals, 14 N.Y. 2nd 488. See also *Locasto v The Long Island Rail Road*, 6 N.Y. 2nd 470. See also *Ralff v Long Island Railroad*, 266 App. Div. 794 * * * affirmed 292 N.Y. 656. See also *Nilsen v Long Island Railroad*, 268 App. Div. 782 * * * affirmed 295 N.Y. 721. See also *Van Houten v The Long Island Railroad*, 279 App. Div. 1099. Leave to appeal denied, 280 App. Div. 830, 304 N.Y. 990. In *Wolf v Smith*, et al., 32 N.Y. 2nd 724. See also that case with respect to the plaintiff's theory of last clear chance."

Plaintiffs' contentions under the doctrine of last clear chance were rejected on the ground that "there has been a failure to substantiate the essential elements of this theory." The court explained its ruling as follows: "The plaintiffs' evidence as to the events preceding the accident do not demonstrate that the infant plaintiff was in a position of danger which was such that he could not extricate himself and that the defendant's *[sic]* employee or employees had actual knowledge of such situation of the infant plaintiff, and had ample time or opportunity to avoid an accident and failed to exercise care in avoiding the accident."

Plaintiffs did not prosecute an appeal from dismissal of their complaints in the earlier actions.

In 1974 plaintiffs commenced the instant action against G & R Packing Company to recover damages for the injuries suffered in the accident seven years earlier. The complaint alleges that defendant maintained its principal place of business on premises adjacent to the Bay Ridge railroad yard where plaintiff was injured, and sets forth five causes of action. The first cause of action contains allegations of negligence similar in tenor to the claims asserted against the

railroads in the prior action. The second cause alleges, upon information and belief, that plaintiff's injuries resulted from defendant's breach of an agreement with the Long Island Railroad Company "and others" under which defendant obtained possession of its business premises and "agreed to provide for the securing of said premises and adjoining railroad yards by adequate safeguards such as fences and signs and other instrumentalities." A third cause of action seeks punitive damages based upon defendant's "wanton[,] wilful and gross neglect". Yet another cause of action states that defendant violated unspecified statutes, rules and regulations of the State and City of New York. Finally, there is a claim for loss of services on behalf of plaintiff John O'Connor.

Defendant's amended answer contains denials and four affirmative defenses, one of which is that plaintiff is collaterally estopped from bringing the action because the issues presented "have already been litigated and determined" in the prior actions.

This appeal followed Special Term's grant of defendant's motion pursuant to CPLR 3211 and 3212 to dismiss the complaint on the ground of collateral estoppel. Special Term took the view that the dismissal of the complaints in the prior actions entailed a necessary determination that plaintiff was guilty of contributory negligence as a matter of law and that such a finding now bars consideration of defendant's negligence.

On appeal, plaintiff takes the position that the heart of Justice SAMANSKY's decision in the antecedent actions was the finding that the railroads had not breached the minimal duty owed to the infant trespasser, and that the dismissal of the prior complaints thus entailed no necessary finding of negligence on plaintiff's part. The finding that the infant was a trespasser, plaintiffs reason, does not preclude recovery in the present action in light of the abolition in 1976 of the distinction among trespassers, licensees and invitees as the determining factor in defining a landowner's duty of care. A single standard of reasonable care under the circumstances was adopted, with foreseeability as the touchstone for liability (see *Basso v Miller,* 40 NY2d 233, 241; *Scurti v City of New York,* 40 NY2d 433, 441). Defendant, on the other hand, maintains that Justice SAMANSKY's observation that "[t]he infant plaintiff * * * deliberately and needlessly exposed himself to a known danger" constitutes a finding of contributory negli-

gence as a *matter of law*. Only this finding, and not plaintiff's status as a trespasser, can account for the dismissal of the prior action. Plaintiff's contributory negligence was necessarily decided because a finding of trespass alone would not have disposed of plaintiff's claim on the theory of dangerous instrumentality. Similarly, a finding of contributory negligence is implicit in the fact that the court addressed plaintiff's theory of last clear chance, because a plaintiff's negligence is a prerequisite to the application of that doctrine. Of further significance, argues defendant, is the fact that the court, in holding the last clear chance doctrine applicable to plaintiff's case, found that plaintiffs had failed to prove that the infant was in a position of danger from which he could not extricate himself. On this basis, defendant asserts that a conclusion that plaintiff was found contributorily negligent as a matter of law is inescapable.

I

▮ The order appealed from must be reversed. The doctrine of collateral estoppel, a branch of the law of prior adjudication, actuates the principle that issues of law and questions of fact necessarily decided by a court of competent jurisdiction remain binding upon the parties and those in privity with them in all subsequent litigation in which the same issues are material *(Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481, 485; *Matter of McGrath v Gold,* 36 NY2d 406, 411; *Statter v Statter,* 2 NY2d 668, 671-672). Although the courts have recently given freer reign to estoppel by prior judgment, the party seeking to secure the benefits of the doctrine must still prove two necessary elements. "First, it must be shown that the party against whom collateral estoppel is sought to be invoked had been afforded a full opportunity to contest the decision said to be dispositive of the present controversy. Additionally, there must be proof that the issue in the prior action is identical, and thus decisive, of that issue in the current action" *(Gramatan Home Investors Corp. v Lopez, supra,* p 485, citing *Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 71). Once these requirements are satisfied, estoppel extends to all matters comprehended by the earlier judgment, whether or not actually litigated or considered, insofar as they are necessary to the prior decision *(Statter v Statter, supra,* pp 672-673; Siegel, New York Practice, § 464, p 614). I am of the opinion that

there was no necessary determination of plaintiff's contributory negligence as a matter of law when the complaints in the prior actions were dismissed. Further, insofar as defendant also seeks summary judgment pursuant to CPLR 3212, the facts necessarily established in the prior litigation still leave a triable issue with respect to the question of contributory negligence which precludes dismissal of the complaint.

■ In applying the doctrine of collateral estoppel, the court must ascertain the issues necessarily decided by the prior judgment and determine which of those issues, if any, are germane to the present litigation. What is or is not necessary to the prior decision will depend upon a host of factors; central among these are the cause(s) of action previously asserted and the manner and extent to which the result embodied in the prior judgment has disposed of the material elements of the dispute. Logic governs identification of the issues laid to rest, but the analysis must also be guided by a sense of fairness to the opposing parties, a criterion which we have called the "crowning consideration" in the doctrine's application. (Read v Sacco, 49 AD2d 471, 474.)

In general, when the earlier judgment can stand on any of several distinct factors or theories and cannot be ascribed with sufficient certainty to one or more identifiable grounds, none of the facts or theories carries an estoppel (see, e.g., Lewis v Ocean Nav. & Pier Co., 125 NY 341; Siegel, New York Practice, § 462, p 612). Conversely, when the court has enunciated alternate legal justifications for the prior judgment, each of which, if taken alone, accounts for the result, the prevailing rule appears to be that estoppel attaches to each of the specified grounds of the decision (Sheldon v Edwards, 35 NY 279; MacAffer v Boston & Maine R. R., 268 NY 400, 403; People ex rel. Watchtower Bible & Tract Soc. v Haring, 286 App Div 676, 679 [dictum]; Restatement, Judgments, § 68, Comment n; see, also, Ann. 133 ALR 840, 846-850).* In the

---

* The Federal courts have cautiously ventured from a rigid adherence to the rule that collateral estoppel fastens to all of the alternative grounds which are independently dispositive in the prior suit (see Halpern v Schwartz, 426 F2d 102 [bankruptcy]; cf. Stebbins v Keystone Ins. Co., 481 F2d 501, 507-508 [one ground not finally dispositive on the merits]; Tanker Hygrade No. 18 v United States, 526 F2d 805; see, also, Note, Collateral Estoppel in New York, 36 NYU L Rev 1158, 1176-1177). One commentator has questioned the strength of the authority in the Federal courts for the rule favoring estoppel on all alternative grounds (see 29 ALR Fed 764). Nevertheless, the prohibition of further litigation of alternative grounds continues to be observed (see Winters v Lavine, 574 F2d 46, 66-69, citing Kessler v Armstrong Cork

realm of negligence, a plaintiff's judgment against a defendant necessarily establishes, under a rule of contributory negligence, that the defendant was negligent and the plaintiff was not (Siegel, New York Practice, § 464, p 614). A general verdict in favor of the defendant, however, has no potential as a collateral weapon against the plaintiff, for the decision could proceed on one of several unspecified grounds, e.g., the defendant's innocence, the plaintiff's contributory negligence, or a failure to prove damages (id.).

In sum, estoppel extends only to those legal grounds which can be identified with sufficient certainty as necessary to the prior judgment. Furthermore, as we shall see in the case at bar, a determination that the judgment rests on a particular ground may logically exclude the possibility that an unspecified alternative matter was necessarily decided. Thus, where it can be shown that the dismissal of a complaint in a negligence action proceeded on the ground that the defendant breached no legal duty owed to the plaintiff, there necessarily can be no implication, in the absence of a clear and specific alternative finding, that the plaintiff was also contributorily negligent for collateral estoppel purposes. This is so because the doctrine of contributory negligence bars plaintiff's recovery despite a breach of duty by defendants. In the absence of such a breach, plaintiff's nonsuit is decisively established and plaintiff's negligence would become a dead letter. This is the situation presented by the case at bar, although the prior decision in favor of the railroads has a number of "wrinkles" which require close examination.

## II

In plaintiff's earlier case, the trial court, in dismissing the complaints, found explicitly that the evidence showed plaintiff to have been a trespasser on railroad property and that there was no proof that the railroad defendants had breached the duty which, under then prevailing law, they owed to the plaintiff, i.e., to refrain from committing any willful or wanton wrong (see Lo Casto v Long Is. R. R. Co., 6 NY2d 470; Keller v Erie R. R. Co., 183 NY 67; Johnson v New York Cent. & Hudson Riv. R. R. Co., 173 NY 79). I am not persuaded by the argument that Justice SAMANSKY placed his

Co., 158 F 744, 747-748, cert den 207 US 597; Williams v Ward, 556 F2d 1143, 1154; cf. Developments in the Law, Res Judicata, 65 Harv L Rev 818, 845-846).

dismissal of the actions on a separate and additional finding of contributory negligence when he commented: "The infant plaintiff not only disobeyed these statutes which were enacted for the benefit of the public but also deliberately and needlessly exposed himself to a known danger by climbing to the top of a freight car and moving about in a close proximity to live high tension wires." My conclusion is based on a combination of considerations. The clear finding that defendants had inflicted no willful or wanton harm on plaintiff was (aside from the last clear chance issue, see *infra)* dispositive of plaintiffs' claim, and estoppel effect should not be conferred on a court's passing observation in the absence of an unequivocal indication that the intent was to make a finding which was either demonstrably essential to the result or distinctively earmarked as a separate and dispositive alternative ground of decision. The court never invoked the concept of contributory negligence by name. Indeed, it is difficult to see how it could have done so in any meaningful way after finding the infant to be a trespasser. While contributory negligence insulates the negligent defendant from liability, at the prior trial, the defendants simply were not negligent vis-à-vis the trespasser. Furthermore, none of the cases which the court cited immediately after the remark in question to support its finding of "no liability on the part of the railroad" were decided on the issue of contributory negligence; rather, all expound the notion, in factual settings similar to the one at bar, that no breach of duty had occurred.

■ ■ Similarly, I find no support in the record for the assertion that Justice SAMANSKY disposed of the dangerous instrumentality theory on the ground that plaintiff was contributorily negligent as a matter of law. This doctrine charges a landowner who maintains an exceptionally hazardous condition or instrumentality with a standard of care which is commensurate with the attendant risk, without regard to the juridical status of persons who may be injured by his failure to observe the proper precautions *(Kingsland v Erie County Agric. Soc.,* 298 NY 409; *Travell v Bannerman,* 174 NY 47; 41 NY Jur, Negligence, §§ 47-48). While contributory negligence bars recovery (see *Travell v Bannerman, supra),* a claim based upon the dangerous instrumentality theory may be dismissed on the independent ground that the defendant observed the requisite standard of care or that the accident was not foreseeable (cf. *Kingsland v Erie County Agric. Soc., supra,* p 424).

Since Justice SAMANSKY dismissed the prior complaints without discussing dangerous instrumentalities, the precise ground upon which he disposed of plaintiffs' contentions under that theory cannot be determined. The record thus affords no basis for a conclusion that the trial court necessarily found plaintiff guilty of contributory negligence as a matter of law (cf. Siegel, New York Practice, § 464, p 614).

### III

■ ■ There is likewise no merit in defendant's contention that the court necessarily found plaintiff contributorily negligent by rejecting his claim under the theory of last clear chance. Reduced to basics, the doctrine of last clear chance requires the defendant having the ultimate power to do so to forfend the plaintiff's injury, though the defendant might otherwise have been relieved of liability by virtue of the plaintiff's own negligence. More particularly, the doctrine, as applied in this State, fixes upon a defendant the onus of rescuing the plaintiff from a peril in which the latter has placed himself and from which he cannot extricate himself, provided the defendant has both actual notice of the plaintiff's plight and a reasonable opportunity to prevent the harm (*Chadwick v City of New York*, 301 NY 176; *Wright v Union Ry. Co.*, 224 App Div 55, affd 250 NY 526; *Kumkumian v City of New York*, 305 NY 167). It is said that the plaintiff's contributory negligence is a prerequisite to the application of the doctrine of last clear chance (*Kumkumian v City of New York, supra*, p 173; *Lee v Pennsylvania R. R. Co.*, 269 NY 53; *Jasinski v New York Cent. R. R.*, 21 AD2d 456, 462) and, further, that where the plaintiff's negligence continues uninterrupted to the point of injury, the theory will not fasten liability, though the defendant's negligence was concurrent. (*Panarese v Union Ry. Co.*, 261 NY 233; *Poli v Castleberry*, 44 AD2d 591; *Wilson v Maiello*, 34 AD2d 221, affd 28 NY2d 594.)

At the outset, it must be conceded that although a plaintiff's contributory negligence is necessarily implied in a positive finding of liability based upon last clear chance, logic allows no such definite conclusion about plaintiff's negligence where the court holds the doctrine inapposite to the case before it. In that situation, while an affirmative finding of contributory negligence is possible (as where the doctrine is held inapplicable because the plaintiff's negligence was concurrent), the last clear chance contention may nevertheless be silenced with

equal effectiveness on any one of several other completely dispositive grounds, such as the defendant's lack of actual knowledge of the plaintiff's peril (see *Dombrowski v New York Cent. R. R. Co.,* 257 App Div 916) or lack of opportunity to avert the accident *(Polk v New York Cent. R. R. Co.,* 10 AD2d 703, 704, affd 8 NY2d 1106). In the instant case, there could be no concession of contributory negligence by virtue of the bare fact that plaintiffs urged the existence of jury issues based upon last clear chance in the earlier case; clearly, such a contention was in the nature of an alternative hypothetical allegation, expressly permitted under our system of pleading and proof (see CPLR 3014). As heretofore noted, I discern no unequivocal, affirmative finding of contributory negligence in Justice SAMANSKY's bench decision in the prior case. Instead, in disposing of the last clear chance theory, the court made three distinct observations about the inadequate character of the evidence, i.e., that the plaintiffs had failed to establish any of the following: (1) that the infant was in a position of danger from which he could not extricate himself; (2) that defendants had actual knowledge of the dangerous situation before the injury occurred and (3) that the railroads had ample time and opportunity to prevent the harm and thus had failed to exercise reasonable care to avoid the accident.

The defendant herein, however, does not stop at the contention that the mere invocation and rejection of the last clear chance doctrine resulted in a necessary finding of contributory negligence. In addition, defendant makes the more sophisticated argument that by finding that the infant had the ability to extricate himself from the peril, the earlier court in effect held plaintiff contributorily negligent as a matter of law. While I agree that the finding of the plaintiff's ability to extricate himself was a part of the court's rejection of last clear chance, I am not convinced that this branch of the prior decision is the functional equivalent of a finding of contributory negligence as a matter of law.

██ ██ Contributory negligence may be defined as "conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard to which he is required to conform for his own protection" (Prosser, Torts [4th ed], § 65, pp 416-417). At the core of the matter is whether the plaintiff's conduct conformed to the standard which an ordinarily prudent person would have observed under the circumstances (see, generally, 41 NY Jur, Negli-

gence, § 56). At bar, in precluding recovery under last clear chance, the prior court first found that the infant *could* have extricated himself from the danger. The thrust of this finding was not that plaintiff's conduct fell below the standard of care, but rather that he was not in a position of total helplessness which might have triggered a duty on the part of the railroads to come to his rescue (see *Woloszynowski v New York Cent. R. R. Co.,* 254 NY 206, 208). Moreover, there is no indication that Justice SAMANAKY made an additional finding of contributory or concurrent negligence in rejecting last clear chance (cf. *Naumann v Lehman,* 1 AD2d 820). In any case, in the absence of a clear and specific alternative finding that contributory negligence has been shown, no estoppel attaches to this issue where the defendants themselves have breached no duty to the plaintiff.

## IV

■ The analysis must continue, however, because although there was no necessary prior determination of contributory negligence as such, the question remains whether the facts necessarily established in the earlier action now require a finding of contributory negligence as a matter of law, in connection with so much of defendant's motion as seeks summary judgment on that issue. There can be no doubt that a determination of the events and circumstances up to and including the accident was necessary to the prior holding that the railroads had inflicted no willful or wanton harm on the trespasser plaintiff (see, e.g., *Keller v Erie R. R. Co.,* 183 NY 67, *supra; Gleason v Central New England Ry. Co.,* 261 NY 333; *Richards v Long Is. R. R. Co.,* 258 App Div 918; *Nilsen v Long Is. R. R. Co.,* 268 App Div 782, affd 295 NY 721; *Van Houten v Long Is. R. R. Co.,* 279 App Div 1099, mot for lv to app den 280 App Div 830, 304 NY 990). In this action plaintiffs are thus bound by the findings that the infant was a trespasser on railroad property and that the accident befell him under the circumstances hereinbefore described. They are further bound by the conclusion that the railroads observed the minimal duty of care required of them in all aspects of their operation of the yard, including their maintenance and use of live high tension wires and their efforts to cut off power from the yard after the presence of children and the plaintiff's accident were discovered. Objective facts such as the location and height of the freight car, the position of the ladder, and

the distance between the catenary wires and the top of the freight car are also directly relevant to the question of whether the plaintiff's harm resulted from the railroads' wanton dereliction.

A finding of contributory negligence as a matter of law is not warranted on the established objective facts. I am aware of the line of cases holding that one who deliberately exposes himself to a known danger is guilty of contributory negligence as a matter of law (see, e.g., *Utica Mut. Ins. Co. v Amsterdam Color Works,* 284 App Div 376, affd 308 NY 816; *Fox v Mission of Immaculate Virgin,* 285 App Div 898, affd 309 NY 812; *Bragg v Smilowitz,* 16 AD2d 181, affd 12 NY2d 769; *Holgerson v South 45th St. Garage,* 16 AD2d 255, affd 12 NY2d 1011; *Guglielmini v Conigliaro,* 35 AD2d 524, affd 29 NY2d 930; *Halstead v Kennedy Valve Mfg. Co.,* 36 AD2d 1005, affd 31 NY2d 901; *Winnick v New York State Elec. & Gas Corp.,* 38 AD2d 623, affd 32 NY2d 624). Examination of these cases, however, reveals that their common and crucial feature is the plaintiffs' established ability and consequent duty to perceive the risks involved in the activities which ultimately injured them. In the case at bar, summary judgment on the contributory negligence issue may rest only upon the instant pleadings and the facts necessarily decided in the prior determination. Although the record in its present state limns with considerable clarity the objective circumstances surrounding the accident, it is deficient with respect to the central question whether this particular infant, under all the circumstances presented, could be expected to appreciate the nature of the danger to which he subjected himself with a degree of understanding sufficient to warrant a finding of negligence on his part as a matter of law. While Special Term has placed heavy reliance on plaintiff's prior testimony to the effect that he understood the nature of electricity and the danger involved in touching a live wire, such reliance must be viewed in the context of Special Term's apparent view that the earlier trial necessarily reached and decided the issue of contributory negligence. In view of our finding that the boundaries of the estoppel are determined not by any finding of contributory negligence but by the finding that the railroads were innocent of any intentional wrongdoing, any prior testimony or findings with respect to the infant's subjective appreciation of the danger could not acquire the status of necessarily decided facts. The specific cause of the infant's injuries, whether it be

his own carelessness or the wrongful conduct of some third party, was not binding for collateral estoppel purposes, but only an incidental link in the chain of proof demonstrating the railroads' innocence. Therefore, the outcome of the earlier action does not preclude the possibility of further litigation of that bundle of factual issues regarding the degree to which this particular infant could or should have perceived the danger of electrical shock as he stood upon the railroad car.

Among the complex of questions which underlie this determination is the threshold issue whether the infant was *sui juris* (see *Gloshinsky v Bergen Milk Transp. Co.,* 279 NY 54) and, if so, the question of the controlling standard of prudent care as it emerges from this infant's capacity, experience and age (cf. *Gloshinsky v Bergen Milk Transp. Co., supra,* p 58; *Haycroft v Lake Shore & Mich. So. Ry. Co.,* 2 Hun 489, affd 64 NY 636). In this connection, the plaintiffs should be afforded an opportunity, if they be so advised, to develop a complete picture of the infant's perceptual and cognitive abilities at the time of the accident. I emphasize, also, that we do not foreclose the possibility that the issue of contributory negligence may be decided as a matter of law at a subsequent trial of this action in which the question becomes germane and receives the proper evidentiary treatment. The present holding is limited to a determination that the record as it now stands does not allow such a resolution of the issue.

■ It should be noted in passing that it was error for Special Term, on the apparent strength of its finding of contributory negligence, to dismiss so much of the complaint as alleges willful, wanton or grossly neglectful conduct on the part of this defendant. It is axiomatic that contributory negligence is no defense to an action based on intentional tort or gross negligence (see *Nelligar v State of New York,* 205 App Div 734).

## V

Accordingly, the order appealed from should be reversed, the motion denied, and the matter remitted to the Supreme Court, Kings County, for further proceedings consonant with this opinion.

LAZER, J. (dissenting). Although the majority's reasoning is both eloquent and persuasive in its contention that the young

plaintiff should have a second chance at recovery, I cannot agree that the bar of collateral estoppel has been overcome.

The earlier actions brought by the plaintiffs against the Metropolitan Transportation Authority and several railroad companies ended when the trial court dismissed the complaints at the conclusion of the evidence. It is obvious from the bench decision in that liability trial that the court was cognizant of its duty to make findings pursuant to CPLR 4213 and that it did so. After declaring that the plaintiffs had failed to establish liability on the part of the defendants on "the plaintiff's theory of negligence as well as the theory of the last clear chance", the court orally set forth a detailed statement of its reasoning. On the negligence issue, there were three separate (but unnumbered) findings:

The plaintiff was a trespasser and the defendants' obligation was solely to refrain from committing any willful or wanton injury;

The plaintiff violated section 83 of the Railroad Law and subdivision 4 of section 1990 of the former Penal Law by walking along railroad tracks and rights of way other than public crossings; and

"The infant plaintiff not only disobeyed these statutes which were enacted for the benefit of the public but also deliberately and needlessly exposed himself to a known danger by climbing to the top of a freight car and moving about in a close proximity to live high tension wires."

I cannot see how the third and last negligence finding by the trial court—that the infant plaintiff was guilty of contributory negligence—can be deemed, as the majority posits, a mere "passing observation". The boy had pleaded freedom from contributory negligence in his complaints against the MTA and the railroads. His injury was dreadful and the dismissal order at the end of the case was severe in its consequences. It is plain from the record that the trial court was quite aware of these considerations and it was attempting to make a careful statement of all of the reasons why the action could not be submitted to the jury for its determination. The chronological order of these reasons seems to assume a great significance in the majority opinion—so great in fact that if the reasons were stated in the reverse order it seems clear that the contributory negligence finding would receive a better rating than "passing observation".

In my view, none of the findings of the trial court was

superfluous and each stands as a complete and separate predicate for the dismissal order. As the majority declares: "[W]hen the court has enunciated alternate legal justifications for the prior judgment, each of which, if taken alone, accounts for the result, the prevailing rule appears to be that estoppel attaches to each of the specified grounds of decision *(Sheldon v Edwards,* 35 NY 279; *MacAffer v Boston & Maine R. R.,* 268 NY 400, 403; *People ex rel. Watchtower Bible & Tract Soc. v Haring,* 286 App Div 676, 679 [dictum]; Restatement, Judgments, § 68, Comment *n;* see, also, Ann. 133 ALR 840, 846-850)."

Accordingly, I dissent and vote to affirm.

HOPKINS, J. P., and TITONE, J., concur with O'CONNOR, J.; LAZER, J., dissents and votes to affirm the order, with an opinion.

Order of the Supreme Court, Kings County, dated November 17, 1978, reversed, on the law, with $50 costs and disbursements, motion denied and action remitted to the Supreme Court, Kings County, for further proceedings consistent with the opinion herein.