■ REBECCA LUKOWSKY, Appellant, v GENE SHALIT et al., Respondents.

In this action plaintiff alleges that she was fraudulently induced by defendants to enter into an agreement titled "Sublease Agreement" which, in effect, was an assignment of her rights and interests in her apartment. Special Term dismissed the complaint on the grounds that it was barred by res judicata and collateral estoppel and failed to state a cause of action against defendants. To have a complete understanding of this appeal, it is essential to discuss plaintiff's prior actions and the factual background of this case.

On May 30, 1978, plaintiff and defendant Bruk Management Company, through its managing partner, defendant Bogoni, entered into a written three-year lease for an apartment for the term July 1, 1978 to June 30, 1981, at a monthly rental of $800. Although strenuously disputed by Bogoni, plaintiff maintains that she and Bogoni became lovers, after which he gave her a new lease for the time period May 1, 1979 to April 30, 1982, at a monthly rental of $400. Plaintiff adds that she ended this relationship in late 1979 and Bogoni then insisted on the payment of $800 rent. Experiencing financial difficulties, plaintiff entered into a "Sublease Agreement" with Gene Shalit and his daughter Willa Shalit for a monthly rental of $1,200 for the term March 12, 1980 to June 30, 1981, coterminous with the 1978 overlease. Plaintiff claims that she was persuaded by Bogoni to make the sublease subject to the 1978 overlease.

In May 1981 Shalit discovered that plaintiff was not entitled to sublet her rent-stabilized apartment for a rent in excess of $800 and, consequently, commenced a proceeding against plaintiff and Bogoni before the Conciliation and Appeals Board (CAB). During the pendency of this proceeding Shalit stopped paying the overcharge and paid directly to Bruk the $800 rent under the 1978 overlease. Also, during the pendency of the CAB matter, plaintiff commenced a nonpayment proceeding against Shalit in Civil Court seeking the $1,200 monthly rent for May and June 1981. Shalit moved to dismiss this action on the grounds that the rent was illegal and that the sublease agreement was in actuality an assignment of the lease, thereby extinguishing plaintiff's interest in the apartment.

In opposition to these defenses, plaintiff submitted an affidavit and memorandum of law requesting that the court clarify the parties' intent in drafting the sublease and that it determine the legal effect of the "ambiguous" agreement. Without setting forth

any details, plaintiff also stated that she felt "deliberately ambushed by an unscrupulous subtenant" and asserted that the landlord, subtenant and subtenant's lawyer had conspired to take away her apartment "by legal trickery and ambush." In a decision dated August 31, 1981, Judge Beverly Cohen dismissed the petition finding, *inter alia,* that petitioner had not shown any basis for the $400 rent increase on the rent-stabilized apartment and that the May and June 1981 rent had been paid directly to the landlord. The court made absolutely no reference to plaintiff's request to ascertain the nature of the lease agreement or her claim of "legal trickery". In fact, the court referred to the agreement as a "sublease".

In April 1982 plaintiff commenced a holdover proceeding against Shalit in which she alleged the existence of the second lease, which expired April 30, 1982. Because Shalit's sublease had expired as of June 30, 1981, plaintiff alleged a reversionary interest in the apartment. Shalit moved to dismiss on the grounds that the lease presented on this petition was a forgery, plaintiff had sworn to the validity of the 1978 overlease, and the sublease he had signed was an assignment of plaintiff's rights in the apartment. On August 3, 1983, Judge Beverly Cohen granted Shalit's motion to dismiss. She ruled that the prior action determined that the lease between petitioner and landlord had a term from July 1, 1978 to June 30, 1981, and that "[f]or [plaintiff] to cite another lease at this time is inexplicable, and can not be a good faith representation."

Plaintiff moved to reargue the dismissal of the holdover proceeding and submitted a supporting affidavit in which she argued the authenticity of the second lease and explained why she was unable to assert it at the earlier action. Although irrelevant to the issue of the second lease's authenticity, plaintiff averred that defendants Bogoni and Shalit had conspired to "remove [her] from the scene" by effecting an assignment of her 1978 lease. The court denied reargument, holding that petitioner was "estopped from pleading [the second lease's] validity since she brought a prior proceeding in which her petition sought possession based on the earlier lease."

On April 1, 1983, plaintiff commenced the instant action for fraud in the inducement of the sublease agreement. In granting defendant's motion to dismiss, the court found, *inter alia,* that the present action was barred by res judicata since plaintiff had raised the defense of fraud in the inducement in the prior Civil Court proceedings and had "every opportunity to obtain a re[s]-cission or reformation of the sublease agreement on the ground of fraud in the inducement." Special Term also found that "for

the court to have dismissed plaintiff's prior proceedings[,] it necessarily had to grapple with the issues raised by plaintiff concerning fraud in the inducement". Accordingly, collateral estoppel also barred the claim. A third ground for dismissal lay in plaintiff's failure to state a cause of action for fraud. Essentially, Special Term felt the claim lacked merit and found that because plaintiff was represented by counsel during the negotiations of the sublease, she could not have relied on the alleged misrepresentation as to the legal import of the document. Accordingly, the complaint was dismissed. We now reverse.

At the core of the doctrine of res judicata is the concept that a valid final judgment bars further actions between the same parties on the same cause of action. (*Matter of Reilly v Reid,* 45 NY2d 24, 27.) If the same "gravamen of * * * wrong" is at issue, the subsequent action is barred. (*Supra,* at p 29.) Although approving of the pragmatic transactional approach to applying res judicata, our Court of Appeals has nevertheless held that even when two successive actions arise from an identical course of dealing, the second may not be barred if the requisite elements of proof and evidence necessary to sustain recovery vary materially. (*Supra,* at p 30; *see also, Smith v Kirkpatrick,* 305 NY 66, 72.) In the instant appeal, while the three actions involved the transaction concerning the sublease agreement, each presented a different gravamen of wrong and distinct cause of action requiring different elements of proof.

Plaintiff's first action dealt solely with nonpayment of rent under the sublease agreement. It was only when defendant Shalit asserted in his motion to dismiss that the sublease was actually an assignment of plaintiff's rights that plaintiff alluded in her opposition papers to the fact that she had been "ambushed" into relinquishing her possessory interest in the apartment. But, even these opposing papers primarily sought the court determine whether the agreement, on its face, was a sublease or assignment. Her mention of the fact that trickery had been employed was only in the context of persuading the court not to dismiss the action and was woefully insufficient to have constituted the assertion of a separate cause of action for fraud. Moreover, the fact that a plaintiff may have asserted the subject matter of his present claim as a defense to a former action does not foreclose the maintenance of his present action on the ground of res judicata. (*Pace v Perk,* 81 AD2d 444, 460.)

Neither did plaintiff raise a cause of action for fraud in her second action, the holdover proceeding. In that proceeding she asserted the existence of the second lease to evidence that she did have a reversionary interest in the apartment. The action

was dismissed because the prior action had determined that the lease in effect between plaintiff and her landlord was the 1978 to 1981 lease. It was only in a motion to reargue, from which no appeal lies and which is not part of the pleadings, that plaintiff superficially alleged a conspiracy on the part of defendants to remove her from the apartment. However, this allegation was not dealt with at any length in the reargument motion, the purpose of which was to show that the second lease was not a forgery. The mention of the fact that there may have been a conspiracy was irrelevant to the dismissal of the holdover proceeding and also insufficient to state a cause of action for fraud, thereby rendering the doctrine of res judicata inapplicable.

Equally unavailing for defendants is the related doctrine of collateral estoppel which holds "that issues of law and questions of fact necessarily decided by a court of competent jurisdiction remain binding upon the parties and those in privity with them in all subsequent litigation in which the same issues are material [citations omitted]." (*O'Connor v G & R Packing Co.,* 74 AD2d 37, 44.) To invoke collateral estoppel two elements must be proved: "There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling." (*Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 71.)

Special Term incorrectly ruled that in dismissing the two prior proceedings, Judge Cohen "necessarily had to grapple with the issues raised by plaintiff concerning fraud in the inducement". The first action for nonpayment of rent was dismissed because the rent had already been paid to the landlord and the $400 overcharge was illegal. The court made no mention of plaintiff's assertion of "legal trickery", nor was it even necessary to deal with that issue in dismissing the action. In the second action, involving the authenticity of the second lease, the issue of fraud was not raised in the pleadings nor was its relevant to the action. The court's dismissal was based solely on the fact that by having pursued relief for payment of rent under the 1978 lease in the first action, plaintiff could not in good faith assert in the second action a different lease. The only matter decided was that the first lease was the one to which the "sublet" agreement had been made subject. The criteria for establishing collateral estoppel have not, therefore, been made out here.

Lastly, the court improperly dismissed the complaint for failure to state a cause of action. The court correctly acknowledged that a misrepresentation of law is actionable if the representation is made by an individual possessing superior knowledge.

(*See, National Conversion Corp. v Cedar Bldg. Corp.,* 23 NY2d 621, 629.) It is equally true that a misrepresentation may be the product of the intentional suppression of the truth (*Noved Realty Corp. v A.A.P. Co.,* 250 App Div 1, 5) and may be effected by words, conduct or the exhibition of documents. (*See,* 24 NY Jur, Fraud and Deceit, §§ 16, 33, and the cases cited therein.) However, the court below, in going behind the pleadings, opined that the claim lacked merit because plaintiff was represented by counsel during the negotiations of the agreement and could not have justifiably relied on the alleged misrepresentation. The extent to which plaintiff was represented by counsel during the negotiations and preparation of the agreement is seriously disputed and, thus, whether or not plaintiff justifiably relied on the misrepresentation as to the legal effect of the agreement presents a triable issue of fact sufficient to defeat defendants' motion for dismissal. Concur — Kupferman, J. P., Ross, Carro and Bloom, JJ.