08-6026-bk
In re Algonquin Power Income Fund

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

   Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

   At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 20th day of January, two thousand and ten.

PRESENT:

> JOSEPH M. McLAUGHLIN,
> ROBERT A. KATZMANN,
>      *Circuit Judges*,
> EDWARD R. KORMAN,
>      *District Judge.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ALGONQUIN POWER INCOME FUND, ALGONQUIN POWER CORPORATION, INC., ALGONQUIN POWER U.S. HOLDINGS, INC., ALGONQUIN POWER FUND, INC., and ALGONQUIN POWER SYSTEMS, INC.,

   *Appellants*,

   -v.-                                                    No. 08-6026-bk

CHRISTINE FALLS OF NEW YORK, INC. and TRAFALGAR POWER, INC.,

   *Appellees.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

   * The Honorable Edward R. Korman, Senior United States District Judge for the Eastern District of New York, sitting by designation.

1

**FOR APPELLANTS:**     JEFFREY A. DOVE (James C. Thoman, *on the brief*), Menter Rudin & Trivelpiece, P.C., Syracuse, NY.

**FOR APPELLEES:**     LAURA W. SMALLEY (Paul J. Yesawich, III, *on the brief*), Harris Beach PLLC, Pittsford, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (David N. Hurd, *Judge*).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment is **VACATED** and **REMANDED** for reconsideration of the merits.

Appellant Algonquin Power Income Fund, Inc., together with other Algonquin entities (collectively, "Algonquin"), appeals from a judgment of the United States District Court for the Northern District of New York (Hurd, *J.*), which was entered after Judge Hurd affirmed an order of the Bankruptcy Court (Gerling, *C.J.*) granting summary judgment to Appellees Christine Falls of New York, Inc. and Trafalgar Power, Inc. (collectively, "TPI"). Judge Gerling had held that Algonquin was collaterally estopped from litigating its interest in a $7.6 million judgment that TPI had obtained in a malpractice action. We conclude that this holding was erroneous.

We briefly summarize the procedural background. TPI obtained a permanent loan in or about February 1989. In January 1996, TPI restructured the loan and the original loan amount was broken into "A Notes" and "B Notes." Later that year, Algonquin purchased the B Notes. In 1999, TPI was awarded a $7.6 million judgment in a malpractice action against Stetson-Harza and Neal Dunlevy ("Stetson-Harza Judgment"). While pending on appeal, TPI assigned the judgment to an affiliate, Pine Run, reciting consideration of "Five ($5.00) Dollars and other good and valuable consideration." Both TPI and Pine Run are wholly-owned subsidiaries of Marina Development, Inc.

2

Algonquin then filed an action against TPI for conversion and fraudulent transfer in the United States District Court for the Northern District of New York (McCurn, *J.*). Algonquin based its conversion claim on the argument that it has a security interest in the Stetson-Harza Judgment. To establish a claim for conversion under New York law, a plaintiff must demonstrate legal ownership or an immediate superior right of possession to specific money. Algonquin contended that it had a superior right of possession to specific money because it had a security interest in the Stetson-Harza Judgment.

Algonquin also sought a preliminary injunction "and/or" an order of attachment precluding TPI from assigning the judgment to Pine Run. Judge McCurn granted Algonquin a preliminary injunction but denied its request for an order of attachment. In his Memorandum-Decision, dated January 16, 2001, he said that he would "briefly examine[] Algonquin's claim for conversion." *Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 131 F. Supp. 2d 341, 348 (N.D.N.Y. 2001). Judge McCurn then explained that Algonquin's argument that it has a superior right of possession to specific money because it has a security interest in TPI's $7.6 million judgment "lacks merit." *Id.* Consequently, he concluded that Algonquin was not entitled to an order of attachment because it could not demonstrate a probability of success on the merits "at this time." *Id.* at 349. Judge McCurn also found Algonquin's argument for a preliminary injunction on its conversion claim—which was likewise premised on Algonquin's claim that it has a security interest in the Stetson-Harza Judgment—"unpersuasive," *id.* 352, although he granted Algonquin's motion on other grounds. The January 16th Memorandum-Decision directed the parties "to submit proposed orders consistent with th[e] decision." *Id.* at 353

3

On February 1, 2001, before the submission of any proposed orders, the parties entered into a stipulation ("Escrow Agreement") "for the purpose of maintaining, during the pendency of the *Algonquin Litigation*, that portion of the proceeds of the Stetson-Harza Judgment that will be paid to TPI and Pine Run in a manner consistent with Judge McCurn's Memorandum-Decision." The stipulation provided that the amount of the full Stetson-Harza Judgment would be placed into an escrow account and that it could be released only with permission of the Escrow Agents and a court order. The stipulation was so ordered by the United States magistrate judge assigned to the case. Twelve days later, on February 13, 2001, Judge McCurn entered an order which, *inter alia*, formally granted the motion for preliminary injunction and denied the motion for an order of attachment.

About six months later, TPI filed a Chapter 11 petition in the Eastern District of North Carolina. As a result, Judge McCurn stayed the proceedings in the district court. Shortly thereafter, venue for the bankruptcy case was transferred to the Northern District of New York. In 2002, Judge McCurn dissolved the preliminary injunction and directed that the escrow funds be disbursed only pursuant to an order of the bankruptcy court. There the funds remained until 2006, when TPI filed an adversary proceeding against several Algonquin entities seeking a declaration that Algonquin did not have a security interest in the proceeds of the Stetson-Harza Judgment that were still being held in escrow. Subsequently, both parties filed motions for summary judgment. Judge Gerling granted summary judgment for TPI because he determined that Judge McCurn's preliminary ruling precluded Algonquin from litigating the issue whether it holds a security interest in the proceeds of the Stetson-Harza Judgment. Judge Gerling also addressed the merits of the issue and determined that Algonquin had no valid interest in the proceeds of the Stetson-Harza Judgment. On Algonquin's appeal to the

4

district court, Judge Hurd affirmed the decision on collateral estoppel grounds without reaching the merits. This appeal followed.

Because the decision claimed to have preclusive effect was rendered by a district court sitting in diversity, we apply the preclusion law "that would be applied by state courts in [New York,] the State in which the federal diversity court sits." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001); *see also*, *e.g.*, *Smith v. Woosley*, 399 F.3d 428, 435–36 (2d Cir. 2005). Nevertheless, "there is no discernible difference between federal and New York law concerning res judicata and collateral estoppel." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002); *accord Pike v. Freeman*, 266 F.3d 78, 91 n.14 (2d Cir. 2001) ("[T]here appears to be no significant difference between New York preclusion law and federal preclusion law . . . ."). This observation applies with particular force to the issues on which this appeal turns. Specifically, there are two principles that apply here that compel the reversal of the judgment from which the appeal is taken.

1. The Supreme Court has observed that the law "is clear that res judicata and collateral estoppel do not apply if a party moves the rendering court in the same proceeding to correct or modify its judgment." *Arizona v. California*, 460 U.S. 605, 619 (1983). We have likewise recognized that res judicata and collateral estoppel "do[] not speak to direct attacks in the same case, but rather [apply only] in subsequent actions." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999); *see also Quatraro v. Vill. of Kenmore Zoning Bd. of Appeals*, 716 N.Y.S.2d 508, 509 (App. Div. 1989) (holding that "principles of res judicata, as well as the doctrine[] of collateral estoppel . . . are not applicable" because "the original determination and the determination upon a rehearing arise from the same proceeding"); *Moezinia v. Damaghi*, 544 N.Y.S.2d 8, 11 (App. Div.

5

1989) ("[P]rinciples of *res judicata* are inapplicable when . . . the two determinations arise in the same action.").

In this case, the order from which the appeal is taken is for all practical purposes a final order entered in the same proceeding as the interlocutory order on which TPI relies in invoking the doctrine of collateral estoppel. Specifically, the record shows that when TPI filed an adversary proceeding in the bankruptcy court seeking a declaration that Algonquin did not have a security interest in the proceeds of the Stetson-Harza Judgment, the action represented a continuation of the original action. Thus, the adversary complaint recited the entire prior history of the case, including the fact that the proceeds of the judgment were still being held in an escrow fund, and sought, *inter alia*, the following relief: (1) "[a]n order declaring that the Algonquin Entities do not have a security interest in the Escrow Funds," (2) elimination of "the existing Algonquin Escrow Agent from the escrow account," and (3) authorization "to establish a new [debtor-in-possession] account subject to the continuing jurisdiction of the Bankruptcy Court."

In sum, TPI sought an order dissolving the escrow account, which protected Algonquin's alleged security interest in the proceeds of the Stetson-Harza Judgment, as well as a final judgment confirming that Algonquin did not have such an interest. Indeed, Judge Gerling acknowledged that the issues raised on the summary judgment motions had their "genesis" in the pre-bankruptcy proceeding in the district court and were inextricably intertwined. *See Christine Falls of N.Y., Inc. v. Algonquin Power Corp., Inc.* (*In re Trafalgar Power, Inc.*), 377 B.R. 32, 34 (Bankr. N.D.N.Y. 2007). Consequently, notwithstanding the meandering detour this case took as a result of TPI filing the bankruptcy petition, Algonquin was not precluded from relitigating its security interest in the proceeds of the tort judgment or raising the issue on appeal.

6

2. Collateral estoppel generally does not apply unless a party had both ample opportunity and sufficient incentive to litigate vigorously. "[A] determination whether the first action or proceeding genuinely provided a full and fair opportunity requires consideration of 'the realities of the [prior] litigation, including the context and other circumstances which . . . may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him.'" *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 501 (1984) (quoting *People v. Plevy*, 52 N.Y.2d 58, 65 (1980) (alteration in original)). A full and fair opportunity to litigate includes the right to an appeal "if the loser wants it." David D. Siegel, New York Practice § 465, at 782 (4th ed. 2005); *see also Pinkney v. Keane*, 920 F.2d 1090, 1096 (2d Cir. 1990). Indeed, the *Restatement of Judgments* § 28, which sets out five separate grounds for avoiding issue preclusion, lists as the first ground the rule that "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action." *Restatement (Second) of Judgments* § 28(1) (1982).

In this case, Algonquin could not have appealed as a matter of right from either the order granting the preliminary injunction or the order denying its application for attachment. As the prevailing party on the motion for preliminary injunction, Algonquin was not aggrieved and did not have a right to appeal. *See Parochial Bus Sys., Inc. v. Bd. of Educ. of City of New York*, 60 N.Y.2d 539, 544–45 (1983) ("Generally, the party who has successfully obtained a judgment or order in his favor is not aggrieved by it, and, consequently, has no need and, in fact, no right to appeal."); N.Y. C.P.L.R. 5511, Comment 1 (McKinney 1995) ("Only a person 'aggrieved' by a determination may appeal the judgment or order that embodies it."). Nor could Algonquin have appealed from the order granting a preliminary injunction simply because the court rejected one of the grounds on which Algonquin relied. Indeed, issue preclusion does not apply to the resolution of an issue that was not

7

"necessary to the prior decision." *Laaman v. United States*, 973 F.2d 107, 112 (2d Cir. 1992); *see also Statter v. Statter*, 2 N.Y.2d 668, 672 (1957); *O'Connor v. G & R Packing Co.*, 426 N.Y.S.2d 557, 562–63 (App. Div. 1980). Moreover, a party does not have standing to appeal "[m]erely because the order appealed from 'contain[s] language or reasoning which [plaintiffs] deem adverse to their interests.'" *M.J. & K. Co., Inc., v. Matthew Bender & Co., Inc.*, 631 N.Y.S.2d 938, 938 (App. Div. 1995) (quoting *Pa. Gen. Ins. Co. v. Austin Powder Co.*, 68 N.Y.2d 465, 472–73 (1986)).

Nevertheless, TPI claims that Algonquin was aggrieved by the denial of its application for an order of attachment and could have appealed from the denial. The problem with this argument is that Algonquin had requested a preliminary injunction *or* an order of attachment. When Algonquin and TPI entered into the stipulation creating the escrow fund, before the formal entry of the order granting a preliminary injunction, they effectively settled the dispute over the appropriate provisional remedy. This was a complete victory for Algonquin because it obtained the security it needed to assure that funds would be available to pay any judgment that it might obtain.

This consideration aside, it is hardly clear that Algonquin would have been able to appeal even if it had been aggrieved by the denial. An order denying an attachment is appealable only when "the appeal presents an important question of law whose resolution will guide courts in other cases." *Kensington Int'l Ltd. v. Republic of Congo*, 461 F.3d 238, 241 (2d Cir. 2006). The issue in this case—whether Algonquin has a security interest in the proceeds of a tort action—involves New York or possibly Connecticut law. A resolution of this claim by a federal appellate court on an appeal from a denial of a provisional remedy would not seem to satisfy that standard.

Moreover, because the order on appeal here constituted the final judgment resolving the issue of Algonquin's security interest in the proceeds of the Stetson-Harza Judgment, Algonquin's failure

to appeal the intermediate order should not preclude a district court or this Court from reconsidering the issue. As the leading treatise on federal practice cautions:

> Great care should be taken . . . to avoid exten[ding preclusion] to continuing proceedings before the first honestly final judgment. The fact that appeal might have been taken from various intermediate orders under an interlocutory appeal statute or an expanded version of the final judgment rule should not preclude reconsideration by the trial court or review on appeal from a traditional final judgment. The opportunity for an earlier appeal is intended to protect the appellant, not to forfeit the right to later review.

18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4433, at 77 (2d ed. 2002).

## CONCLUSION

Because Judge Hurd erroneously applied the doctrine of collateral estoppel without reaching the issue of Algonquin's claimed security interest in the proceeds of the tort judgment, we VACATE and REMAND for consideration of the merits of Algonquin's security interest in the proceeds of the malpractice action.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

By_____

9