CREED TAYLOR, INC., Plaintiff,

v.

CBS, INC., CBS Records, Columbia Record Productions, Inc., & Epic Records, Inc., Defendants.

No. 88 Civ. 7666 (RLC).

United States District Court, S.D. New York.

Aug. 2, 1989.

Uscher, Quiat, Russo & Uscher, New York City, for plaintiff; Michael E. Quiat, of counsel.

Parker Chapin Flattau & Klimpl, New York City, for defendants; Stephen G. Rinehart, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Creed Taylor, Inc. ("CTI") is a record company known particularly for its jazz recordings. It has brought this action claiming that defendant CBS, Inc. and several of its affiliates [1] engaged in wrongful activities on a continuing basis since approximately 1978 for the purpose of harming CTI and misappropriating its name, label, reputation, and assets. Federal claims are alleged pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, along with a variety of pendent state law claims.

CBS has moved for dismissal of the amended complaint for failure to state a

---

1. Some confusion or disagreement exists as to the status of the various named defendants. The instant motion has been filed by defendant CBS Inc. and by CBS Records Inc. The latter entity is not named as a party in the action, but defendants state in their brief that "CBS Inc. is no longer engaged in the record business, having sold that business to SONY–USA where it is carried on by CBS Records, Inc." Since the identity of the named defendants is not at issue in the instant matter, the court will refer to them collectively as "CBS" for the sake of simplicity.

claim upon which relief can be granted or, alternatively, for summary judgment on the ground that CTI's claims are barred by res judicata. CBS has also moved for sanctions pursuant to Rule 11, F.R.Civ.P., on the ground that the amended complaint was filed without reasonable inquiry having been made that it was well founded in fact and law.

*Background*

CTI filed for bankruptcy in early 1978. CBS was one of CTI's creditors, and in 1980 the two companies entered a court sanctioned agreement (the "Distribution Agreement") whereby CBS provided funding that permitted CTI to emerge from bankruptcy in exchange for rights to CTI's catalogue of master recordings (the "masters"). Disputes arose between CBS and CTI regarding the Distribution Agreement, and on or about June 8, 1981, the two companies entered a second agreement (the "Settlement Agreement") that superceded the first. Under the Settlement Agreement, CTI regained control of the masters and agreed to pay CBS $400,000 in eight monthly installments beginning September 10, 1981. CTI's obligation was secured by the masters.

CTI paid only $68,000 of its $400,000 obligation to CBS. Following CTI's default, CBS commenced an action in New York State Supreme Court seeking a judgment as to the remaining $332,000 based on the Settlement Agreement, the promissory notes that CTI signed in connection with the Settlement Agreement, and personal guarantees also executed with the Settlement Agreement. CBS also sought judgment for approximately $32,000 that it claimed was owed to it by CTI for production services. In its fifth and final cause of action CBS sought a judgment of foreclosure and sale of the masters. The case was heard by Justice Arthur E. Blyn.

CBS filed a motion for summary judgment as to this last cause of action. CTI cross-moved for leave to amend its answer, asserting as an affirmative defense that CBS exerted undue economic influence over CTI and coerced it to enter the Settlement Agreement. Justice Blyn granted CBS's motion for summary judgment, holding that there were no triable issues of fact as to the validity of CBS's claim. CTI's defense of economic duress was expressly rejected.

> The court finds that there was no threat or act by plaintiff who has a right to enforce its rightful claim. The court also finds that defendants did not establish a lack of good faith on the part of plaintiff in seeking to enforce its lawful claim. The court further finds that the defendants were guilty of laches in raising this defense after three years and doing so only when the plaintiff brought on its motion for a preliminary injunction.

*CBS Inc. v. Creed Taylor et al.*, No. 17421/83, slip op. at 7 (N.Y.Sup.Ct. Oct. 15, 1984). CTI's cross motion was then denied in the following terms. "Defendants' cross-motion for leave to amend their answer to interpose an affirmative defense and counterclaim of duress is denied, *in light of this court's granting of partial summary judgment on that very issue.*" *Id.* at 8 (emphasis added). By an order and judgment dated February 26, 1985, CTI was ordered to turn over the masters to CBS to "be sold in accordance with the provisions of UCC 9–504," New York Uniform Commercial Code § 9–504 (McKinney 1964, & Supp.1989) [hereinafter "UCC"], in satisfaction of CTI's $332,000 debt to CBS plus approximately $149,494 in accrued interest and costs. This order and judgment was upheld on appeal "for the reasons stated by Arthur Blyn, J., at Special Term." *CBS Inc. v. Creed Taylor et al.*, 113 A.D.2d 719, 493 N.Y.S.2d 431 (1st Dept. 1985).

After first announcing its intention to auction the masters, CBS decided instead to retain them pursuant to UCC § 9–505(2). CTI did not object within the time period allowed a debtor under that section to force a sale of the collateral.

Almost three years later, at the same time the instant action was commenced, CTI moved in state court that CBS be held in contempt for failing to sell the masters in compliance with Justice Blyn's order. During the pendency of the instant pro-

ceedings, this motion was denied by Justice Francis N. Pecora on the ground of laches.

> [I]t has been over three years since CTI, the owner of the collateral, received notice from CBS of its election to retain the collateral. Even if CTI's rights were not wholly extinguished by its failure to object on a timely basis, the delay by CTI in raising an objection, combined with the efforts and expenditures of CBS *in the interim* to maximize the value of the collateral, appear to make it inappropriate for CTI to now seek to engage CBS and this court in burdensome litigation.... In view of the court's holding that the moving defendants are guilty of laches with prejudice to CBS having been amply demonstrated, the court need not address the other issues raised by this motion and all of the relief sought by this motion is accordingly denied.

*CBS Inc. v. Creed Taylor et al.*, No. 17421/83, slip op. at 8–9 (N.Y.Sup.Ct. April 28, 1989) (emphasis in original).

### Res Judicata and Collateral Estoppel

If the state court determinations described above bar any of CTI's claims on grounds of res judicata, CBS's challenge to the adequacy of those claims is mooted. Accordingly, the court will first consider the preclusive effect, if any, of these decisions.

In addressing this issue, a choice of law determination is required. If a prior judgment issues from a federal court, its preclusive effect in another federal court is to be determined by an inquiry into the common law and general policies supporting res judicata and collateral estoppel. *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). However, if the judgment issues from a state court, the full faith and credit statute, 28 U.S.C. § 1738, requires a federal court to give it "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

In the instant case, the prior judgment at issue was rendered by a New York State court, so it must be given the same preclusive effect as it would be given under New York law. *Cullen v. Margiotta*, 811 F.2d 698, 732 (2d Cir.1987), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). Consequently, the cases upon which CTI and CBS principally rely are inapposite.

In *George v. United Kentucky Bank, Inc.*, 753 F.2d 50 (6th Cir.1985), *cert. denied*, 471 U.S. 1018, 105 S.Ct. 2024, 85 L.Ed.2d 306 (1985), a case that CTI cites and discusses at length, the Sixth Circuit construed Kentucky law to decide whether a Kentucky court judgment precluded a subsequent RICO action from being prosecuted in federal court based on the same factual allegations litigated in state court. See also, *Wicker v. Board of Education*, 826 F.2d 442, 450–51 (6th Cir.1987); *Barnes v. McDowell*, 848 F.2d 725, 730–31 (6th Cir.1988). Because the decision was based on Kentucky law, rather than New York law, it is irrelevant to a determination of the instant matter.

*Cullen v. Paine Webber Group, Inc.*, 689 F.Supp. 269 (S.D.N.Y.1988) (Lasker, J.), a case upon which CBS places substantial reliance, is similarly inapposite. The issue decided in *Paine Webber* was whether a prior arbitration panel decision precluded a subsequent civil RICO action from being prosecuted in federal court based on the same factual allegations litigated in the arbitration proceeding. Noting that 28 U.S.C. § 1738 applies only to state *judicial* proceedings, the court decided the question on the basis of federal rather than state preclusion law. See *id.* at 278 n. 12. Cases involving prior state court decisions were expressly distinguished on this basis. See *id.* at 277.

As explained above, the preclusive effect of Justice Blyn's and Justice Pecora's decisions must be decided on the basis of New York law. In doing so, it is necessary to distinguish between the doctrines of res judicata and collateral estoppel, or, as they are now commonly termed, the doctrines of claim preclusion and issue preclusion.

■ Speaking generally, the doctrine of res judicata or claim preclusion bars the parties to a previously decided case, or their privies, from relitigating any claim that either was or could have been litigated based on the circumstances at issue in the previous action. The doctrine of collateral estoppel has a narrower scope but a broader application. It bars the relitigation of only those issues that actually were decided in the previous case, rather than encompassing issues that could have been litigated but were not. However, it can be invoked in cases that are unrelated to the prior action except for the common issue regarding which preclusion is sought. See *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).

In deciding res judicata claims, New York follows the transactional analysis approach. "Under this address, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981). However, "before full *res judicata* effect can be given to a prior judgment it must be shown that the prior judgment was a final adjudication on the merits." *McNaughton v. Hudson*, 50 A.D.2d 863, 377 N.Y.S.2d 140, 142 (2nd Dept.1975). In addition, "a claim is not barred by res judicata if the court in which the first action was brought lacked subject matter jurisdiction to adjudicate that claim." *Cullen v. Margiotta*, 811 F.2d at 732 (citations omitted).

■ CTI argues that Justice Blyn's decision should not be accorded res judicata effect, because it was not a ruling on the merits. This characterization of the decision is contradicted by its express language. CTI's cross-motion for leave to amend their answer to interpose an affirmative defense and counterclaim of duress was denied, "in light of [the] court's granting of partial summary judgment on that very issue." *CBS Inc. v. Creed Taylor et al.*, No. 17421/83, slip op. at 8 (N.Y.Sup.Ct. Oct. 15, 1984). In its state court appeal,

CTI acknowledged that Justice Blyn's decision addressed the merits of the case when it argued that, "analyzed carefully, it becomes apparent that what Special Term really did was to grant the motion to amend and then determine the merits of the claim." Affidavit of Michael E. Quiat, Exhibit A at 26–27.

Justice Pecora's decision was also conclusive. A dismissal for statute of limitations reasons is equivalent to a decision on the merits for res judicata purposes, *Smith v. Russell Sage College*, 54 N.Y.2d 185, 194, 445 N.Y.S.2d 68, 72, 429 N.E.2d 746, 750 (1981); *DeCrosta v. Reynolds Constr. and Supply Corp.*, 41 N.Y.2d 1100, 1101, 396 N.Y.S.2d 357, 359, 364 N.E.2d 1129, 1130 (1977), at least within the same jurisdiction. See *Taylor v. New York City Transit Auth.*, 309 F.Supp. 785, 790 (E.D.N.Y. 1970); C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 4441 at 366–67. Where the prior decision was grounded on laches, the same considerations apply. See e.g., *National Benefit Fund v. Presbyterian Hosp.*, 448 F.Supp. 136 (S.D.N.Y.1978) (Pollack, J.).

CTI also argues that Justice Blyn's entry of partial summary judgment was not a final decision in the case, because it left four causes of action unlitigated. However, with the exception of one relatively minor matter of which no issue has been made in the instant action, these undecided claims sought essentially the same relief granted to CBS by Judge Blyn's order. The different causes of action merely recited different grounds for claiming that relief. To claim that Justice Blyn's decision was not finally dispositive of the case in its entirety is formally correct but substantively meaningless. There was nothing of significance left to litigate, as CTI's attorney acknowledged at the time in testifying by affidavit that "[i]t is clear that summary judgment at this stage of the proceedings would be the end of all litigation." Rinehart Affidavit, Exhibit C at 4.

By its terms, Justice Blyn's decision definitively disposed of the claims that CTI advanced in an effort to prevent foreclosure on the masters in satisfaction of

CTI's debt to CBS. Justice Pecora's decision similarly disposed of the claims advanced by CTI in an effort to seek redress for CBS's alleged misconduct in retaining the masters. It follows that CTI is barred, on grounds of res judicata, from relitigating any and all claims arising out of the transactions at issue in those litigations.

In consequence, virtually all of CTI's state law claims are precluded. CTI's second cause of action alleges that CBS violated Justice Blyn's order. Even if such a claim could be brought in federal court, it would be precluded in this instance by Justice Pecora's decision. The same is true of CTI's fifth and sixth causes of action which allege that CBS defeated CTI's right to redeem the masters under UCC § 9–506 and fraudulently misled CTI and the court regarding its intention to sell the masters following foreclosure.

CTI's fourth cause of action (for breach of the Settlement Agreement) is precluded by Justice Blyn's decision. CTI's third cause of action (for replevin), seventh cause of action (for conversion), and eighth cause of action (for unjust enrichment) are all precluded by the combined effect of Justice Blyn's and Justice Pecora's decisions. All of these claims are barred because they seek to relitigate claims that either were advanced or could have been advanced in the state court litigation described above.

CTI's ninth cause of action alleges that CBS "tortiously interfered with the business relationships of the Plaintiff, *by denying and defeating Plaintiff's right to redeem and to continue its contractual and other business relationships with various third parties, including jazz artists.*" Amended Complaint at 21 (emphasis added). The behavior complained of does not go beyond the series of transactions out of which the state court action arose. No interference with business relationships is alleged other than by means of CBS's allegedly wrongful appropriation of the masters. This claim is precluded, because it could have been advanced by CTI in the state court action.

CTI's tenth cause of action (for defamation) is so vaguely worded that the court cannot determine whether it is precluded on res judicata grounds, but its very vagueness defeats it on other grounds. No specific form need be followed in pleading defamation in federal court, but it is necessary that "the complaint 'afford defendant sufficient notice of the communications complained of to enable him to defend himself.'" *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir.1986) (quoting *Liquori v. Alexander,* 495 F.Supp. 641, 647 (S.D.N.Y. 1980) (Carter, J.)). CTI's amended complaint does not satisfy this requirement. It avers that CBS has sought to disseminate false and misleading information meant to convey that "CTI and its principal are 'has beens' who are no longer a force in the music industry, and who now exist only in the context of the Defendants name and label." Amended Complaint at 23. CTI's RICO claim includes in its list of alleged predicate offenses, an allegation that appears to refer to the same behavior complained of in the defamation count. Amended Complaint at 11–12. However, the only additional fact alleged is that the communications commenced on or about February 26, 1985. This does not afford CBS with enough information regarding its alleged defamatory statements to frame a defense. Consequently, the claim must be dismissed for failure to state a valid claim.

■ CTI's two RICO causes of action are not claim precluded under New York law. "New York regards the federal courts as having exclusive jurisdiction over civil RICO claims, and the New York state courts, therefore, as having no jurisdiction to entertain such claims. Accordingly, under New York's preclusion principles, a judgment in a prior New York state court action does not bar the subsequent assertion of civil RICO claims." *Cullen v. Margiotta,* 811 F.2d at 732 (citations omitted).

Nonetheless, CTI may be collaterally estopped from advancing certain RICO claims because of the issue preclusive effect of the prior state court litigation between the parties. As with the doctrine of res judicata, state court decisions are to be

given the same issue-preclusive or collateral estoppel effect as they would be given in the courts of the state from which they originated. See *Allen* 449 U.S. at 96, 101 S.Ct. at 415–16.

For issue preclusion to exist under New York law, it is necessary that "the issue as to which preclusion is sought be identical with the issue decided in the prior proceedings, that the issue have been necessarily decided in the prior proceeding, and that the litigant who will be held precluded in the present proceeding have had a full and fair opportunity to litigate the issue in the prior proceeding." *Capital Telephone v. Pattersonville Telephone*, 56 N.Y.2d 11, 17, 451 N.Y.S.2d 11, 436 N.E.2d 461 (1982). "Once these requirements are satisfied, estoppel extends to all matters comprehended by the earlier judgment, whether or not actually litigated or considered, insofar as they are necessary to the prior decision." *O'Connor v. G & R Packing Co.*, 74 A.D.2d 37, 426 N.Y.S.2d 557, 562 (2nd Dept.1980), *aff'd* 53 N.Y.2d 278, 440 N.Y. S.2d 920, 423 N.E.2d 397 (1981); *cf. Tucker v. Arthur Andersen*, 646 F.2d 721, 729 (2d Cir.1981).

■ Pursuant to these principles, CTI is precluded from seeking to establish, under the heading of its RICO claim, that CBS exerted undue economic influence on it in negotiating the Settlement Agreement, or that CBS acted in bad faith when it sought to enforce the Settlement Agreement. For this reason, the allegations contained in paragraph 7(b) of CTI's first cause of action must be stricken. See Amended Complaint at 10. Justice Blyn decided these issues against CTI, and his decision was necessary to overcome CTI's opposition to CBS's motion for partial summary judgment in the state court proceedings.

CTI argues that it did not have a full and fair opportunity to litigate these issues before Justice Blyn. First, CTI asserts that CBS moved for partial summary judgment before any discovery could be taken to substantiate CTI's affirmative defenses. The record of the case does not support CTI's suggestion that CBS submitted its motion for partial summary judgment so

quickly that CTI's opportunity to conduct discovery was effectively forestalled. CBS did not file its motion until nine months after the commencement of the suit. CTI had ample opportunity to formulate a defense against the suit, and the record of the case, some of which has been submitted to the court in the form of affidavit exhibits, shows that CTI vigorously opposed CBS's motion, albeit without having conducted any discovery.

CTI also argues that the issues decided by Justice Blyn were not fully and fairly litigated, because they were decided upon a motion for partial summary judgment rather than after a trial. This claim also lacks merit. Issues decided upon a motion for summary judgment may be accorded the same preclusive effect as issues decided following a trial. *Collins v. Bertram Yacht Corp.*, 42 N.Y.2d 1033, 399 N.Y.S.2d 202, 369 N.E.2d 758 (1976); *Blythe Indus. v. Puerto Rico Aqueduct & Sewer Auth.*, 607 F.Supp. 1386, 1388 (S.D.N.Y.1985) (Edelstein, J.); Restatement (Second) of Judgments § 27 comment d (1982). As the Fifth Circuit has commented,

> It would be strange indeed if a summary judgment could not have collateral estoppel effect. This would reduce the utility of this modern device to zero. It would compel the useless ritual of a formal trial to get the equivalent ruling at the end of the evidence—plaintiff's, defendant's, or all—of a directed verdict. Indeed, a more positive adjudication is hard to imagine.

*Exhibitors Poster Exch. v. National Screen Serv. Corporation*, 421 F.2d 1313, 1319 (5th Cir.1970).

■ In contrast, Justice Pecora's decision does not have any collateral estoppel effect. Under the doctrine of collateral estoppel, a party is precluded from relitigating only those issues that were necessarily decided in a prior litigation. A court decision grounded on laches leaves open those issues that would have to be addressed if the action were not time-barred. For this reason, such decisions are not given collateral estoppel effect with respect to the underlying issues litigated in the case.

See *Flaherty v. Marsh*, 268 A.D. 380, 51 N.Y.S.2d 145, 150 (1st Dept.1944); *Fioranelli v. News Bldg. Corp.*, 102 Misc.2d 825, 424 N.Y.S.2d 677, 679 (Sup.Ct.1980). Because CTI's motion before Judge Pecora was dismissed on grounds of laches, the court did not determine whether CBS's retention of the masters was proper, nor did it decide any other questions subsidiary to that issue. CTI is therefore free to relitigate these issues in the context of its RICO claims, if those claims state valid causes of action.

### RICO

CTI alleges violations of three RICO provisions, 18 U.S.C. §§ 1962(b), (c), and (d). Section 1962(b) provides that:

It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate commerce.

Section 1962(c) provides that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Section 1962(d) provides that:

It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

■ The first deficiency in CTI's statement of its RICO claims is that it has not alleged the existence of a legally appropriate enterprise for purposes of its statutory claims. Under RICO, the term enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO enterprise must be an association of natural persons or legal entities. It cannot be a collection of inanimate objects or a technology. *Friedlander v. Nims*, 571 F.Supp. 1188, 1194 (N.D.Ga.1983) (camera system not a RICO enterprise). CTI has failed to satisfy this requirement in its pleading.

■ In its original complaint, CTI identified the "Masters Catalogue of CTI" as the enterprise which the defendants allegedly acquired in violation of § 1962(b), and whose activities they conducted and continue to conduct through a pattern of racketeering activity in violation of § 1962(c). Complaint at 8–9. In its amended complaint CTI redesignates the enterprise the "CTI Masters Catalogue Program."

The original specification was clearly deficient, since it identified inanimate objects as a RICO enterprise, and it is not clear what change CTI believes it has achieved by means of its amended specification. The term "Masters Catalogue Program" does not appear elsewhere in the complaint, and it is never defined or explained therein. In context, no reasonable reader could distinguish between the two terms. They appear to mean the same thing and are deficient for the same reason. Since repleading may be able to cure this defect,[2] the

---

**2.** In its brief, CTI attempts to overcome the inadequacy of its pleading by defining the Masters Catalogue Program as an association in fact of the defendants formed to acquire and exploit the masters by unlawful means. Such a definition of the alleged RICO enterprise still might not be legally sufficient.

The Second Circuit has held that an entity charged as the "person" committing a RICO offense under § 1962(c) may also be named as one of a number of members of the affected RICO "enterprise," *Cullen v. Margiotta*, 811 F.2d 698, 729–30 (2d Cir.1987), but a solitary entity

cannot simultaneously be the RICO "person" and the RICO "enterprise." *Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); see also *Cullen v. Margiotta*, 811 F.2d at 729.

The amended complaint identifies the defendants as a corporation, one of its divisions, and two of its wholly owned subsidiaries. Amended Complaint ¶¶ 4, 6–8. It has not been unambiguously decided by this court whether a corporation and its wholly owned subsidiaries can be both "persons" and an "enterprise" for purposes

court will consider the adequacy of CTI's RICO pleading in other respects.

The predicate criminal acts alleged by CTI in support of its RICO claim consist of purported acts of mail and wire fraud.[3] However, these allegations are not pleaded with the particularity required by Rule 9(b), F.R.Civ.P., in civil RICO actions grounded on charges of mail and wire fraud. See *Official Publications, Inc. v. Kable News Co., Inc.*, 692 F.Supp. 239, 245–46 (S.D.N.Y.1988) (Edelstein, J.); *Anitora Travel, Inc. v. Lapian*, 677 F.Supp. 209, 214–16 (S.D.N.Y.1988) (Leisure, J.).

▮▮▮ Where allegedly fraudulent communications by mail or wire are charged as predicate RICO acts, the plaintiff must set forth the contents of the communications alleged to have been fraudulent, how each of the communications was false and misleading, who made the communication, and the time and place of each communication. *Official Publications*, 692 F.Supp. at 245. Also, "[a]llegations of fraud that refer only to the 'defendants,' without connecting particular misrepresentations to particular defendants" are insufficient. *Id.* at 246. Finally, if an act of wire fraud is alleged, it must be predicated on an interstate communication. *Eisenberger v. Spectex Indus., Inc.*, 644 F.Supp. 48, 51 (E.D.N.Y.1986).

In addition, "[i]t is established in this Circuit that under Rule 9(b) 'mere conclusory allegations to the effect that defendant's conduct was fraudulent ... are insufficient.'" *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080 (1977) (Gagliardi, J.) (quoting *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir.1971)) (other citations omitted). Particularized allegations of fact or circumstance must be made which, if proved, would make out a

case of fraud. In general, the allegations may not be based on information and belief. "[T]he rule is relaxed as to matters peculiarly within the adverse parties' knowledge, [but] the allegations must then be accompanied by a statement of the facts upon which the belief is founded." *Segal v. Gordon*, 467 F.2d 602 (2d Cir.1962). The allegations founded on these facts must be reasonable. Mere suspicions that a fraud may have occurred are not sufficient. One of the purposes of Rule 9(b) is "to inhibit the filing of a complaint as a pretext for discovery of unknown wrongs." *Gross*, 431 F.Supp. at 1087. "A complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should serve to seek redress for a wrong, not to find one." *Segal*, 467 F.2d at 607–08.

▮▮▮ CTI's allegations of mail and wire fraud fail to satisfy these pleading requirements. The allegedly fraudulent communications are described, for the most part, only in general terms. The person or persons who made the allegedly fraudulent communications are not identified. None of the alleged misrepresentations are connected to particular defendants. The place the communications were made from or to is not identified. Finally, CTI's claim that the communications were fraudulent is conclusory. With one exception, *supra* note 3, the alleged misrepresentations consist of promises of future action. It is claimed that these promises were false and misleading, because defendants had no intention of doing what they promised to do. However, no facts are stated tending to support these conclusory allegations. They simply flow from CTI's belief in its own grievance. More than that is required in pleading fraud, especially when claiming that defendants committed indictable criminal fraud.

of §§ 1962(b) and (c) when not acting with others. *Compare Fustok v. Conticommodity Services, Inc.*, 618 F.Supp. 1074, 1075–76 (S.D.N.Y. 1985) (Lasker, J.) *with Cullen v. Paine Webber Group, Inc.*, 689 F.Supp. 269, 275 (S.D.N.Y.1988) (Lasker, J.). For a discussion of the issue as decided by the D.C. Circuit, see *Yellow Bus Lines, Inc. v. Local Union 639*, 839 F.2d 782, 789–92 (2d Cir.1988). For a discussion of a related issue in the context of the Sherman

Antitrust Act, see *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 766–74, 104 S.Ct. 2731, 2739–43, 81 L.Ed.2d 628 (1984).

**3.** On its face, the last of the predicate acts listed by CTI alleges defamation rather than mail or wire fraud. Acknowledging in its brief that defamation does not constitute a predicate act under RICO, CTI urges the court to view the paragraph at issue as containing an allegation of mail and wire fraud.

See *Plount v. American Home Assurance Co.*, 668 F.Supp. 204, 206–07 (S.D.N.Y. 1987) (Sweet, J.).

CTI's first cause of action, its substantive RICO claim, must therefore be dismissed both for failing to allege a proper RICO enterprise and for failing to allege fraud with particularity. CTI's eleventh cause of action, its RICO conspiracy claim, must also be dismissed, because it fails to allege any conspiracy other than one to commit the RICO offense inadequately pleaded in its first cause of action. CBS argues that there are additional grounds for dismissing both RICO counts, but the court need not consider those claims.

*Rule 11 Sanctions*

CBS has moved that sanctions be imposed on CTI for filing its complaint without having made a reasonable inquiry to determine that it is well grounded in fact and law.

■ In *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985), the mandate of Rule 11, F.R.Civ.P., was interpreted as follows:

"[T]he language of the new Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed.... [S]anctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Id.* at 253–54 (emphasis in original). In *International Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388 (2d Cir.1989), the Second Circuit made it clear that "[t]his requirement assures that lawyers are prepared to demonstrate that they have done the necessary investigation *prior* to appearing in court." *International Shipping*, at 390 (emphasis added). It is counsel's conduct at the time of submission that is relevant to a Rule 11 inquiry, not whether a colorable argument can be constructed supporting the submission based on research conducted after the fact. *Id.* at 390.

■ According to these standards, CTI's attorney came perilously close to violating Rule 11 in his pleading of CTI's RICO claims. The requirement that mail and wire fraud predicates be pleaded with particularity in RICO claims is clearly stated in the relevant case law, and CTI's statement of those claims does not come close to satisfying the particularity standard. The insufficiency of a defamation charge as a RICO predicate act is ascertainable from the face of the statute, as is the insufficiency of CTI's bare statement that the "CTI Masters Catalogue Program" is a RICO "enterprise."

CTI's effort to repair these latter two deficiencies by claiming that the defamation charge included as a RICO predicate really pleads mail and wire fraud and that the term "CTI Masters Catalogue Program" refers to an association in fact of the defendants is the kind of *"post hoc slight of hand" International Shipping*, at 390, that cannot cure a violation of Rule 11.

CTI's investigation of applicable preclusion doctrine also appears to have been inadequate, but the practical effect of that negligence was limited. Prior to the issuance of Justice Pecora's decision, the only state law claims CTI was precluded from bringing in the instant action were those based on the transaction at issue in the litigation before Justice Blyn. CTI was not precluded from advancing claims based on actions taken by CBS subsequent to the filing of the state law case decided by Justice Blyn. Thus, although the court has dismissed all of CTI's state law claims, they were not all barred on grounds of res judicata when CTI commenced the instant action. Only CTI's fourth cause of action alleging breach of the Settlement Agreement was based on actions wholly predating Justice Blyn's decision.

Moreover, CBS was also remiss in its investigation of the res judicata issue. Along with CTI, it completely overlooked the applicability of section 1738 to this case

and failed to note the controlling authority of *Cullen v. Margiotta* with respect to the question of whether a New York State court judgment can have claim-preclusive effect on a subsequent civil RICO action brought in federal court.[4]

Under these circumstances, the court does not feel that the imposition of sanctions is called for. However, the court warns counsel for both sides that any subsequent submissions in this case will be carefully scrutinized for their adequacy under Rule 11.

*Conclusion*

CTI's first, tenth, and eleventh causes of action are dismissed for failure to state a claim upon which relief may be granted. CBS is granted summary judgment on CTI's second through ninth causes of action on grounds of res judicata. CTI is granted leave to amend its complaint within 20 days if, upon reasonable inquiry, it believes it can properly do so.

IT IS SO ORDERED.

---

**4.** CBS's failure to note the *Cullen v. Margiotta* holding is particularly inexcusable, since the case is both cited and summarized in *Cullen v.* *Paine Webber* to which CBS devotes almost two pages of discussion in its brief.