MANHATTAN KING DAVID RESTAURANT INC. d/b/a David's Harp and Le Sannom Building Corp., Appellants,

v.

Arthur B. LEVINE, as Receiver and Joseph Nathanson, Appellees.

No. 92 Civ. 8715 (LAP).

United States District Court, S.D. New York.

May 24, 1993.

---

Ernest H. Hammer, New York City for appellants.

Joseph J. Ceccarelli, Daniel S. Lopresti, Sieratzki & Ceccarelli, New York City, for appellees.

## OPINION AND ORDER

PRESKA, District Judge.

This is an appeal from an order of the bankruptcy court directing the debtor, Manhattan King David Restaurant ("MKDR") to pay $35,483.87 in post-petition rent prior to assumption of an unexpired lease pursuant to section 365(d)(4) of the Bankruptcy Code.[1] For the reasons stated below the decision of the bankruptcy court is affirmed.

### Background

MKDR purchased all the stock of its co-debtor, Le Sannom Building Corp. ("Le Sannom") from 47th Street Photo, Inc. ("47th Street") in December 1989.[2] Record on Appeal from an Order of the Bankruptcy Court Directing Payment by Debtor-Restaurant in the Sum of $35,483.87 and in the Event of Non–Payment Denying Debtors' Motion for Authorization to Assume Non–Residential Unexpired Leases, As Modified, Deeming Leases to be Rejected and Directing the U.S. Marshall to Remove the Debtor–Restaurant From Possession ("R. 8715 at ___") at 20.[3] Le Sannom is the fee owner of a seven-story commercial loft building located at 148–50 West 46th Street, New York, New York (the "Building").

On October 12, 1988, Le Sannom executed a mortgage agreement (the "Second Mortgage") and a promissory note (the "Note") pursuant to which Le Sannom agreed to borrow approximately $1,000,000 from Joseph K. Nathanson ("Nathanson") secured by a second mortgage on the Building. Of that amount, Le Sannom requested and received a total of $850,000 from the Mortgagee. R. 8717 at 146–154. Subsequently, a corporation wholly owned by Nathanson, Considerate Discount Corp., purchased the outstanding first mortgage on the Building from the Anchor Savings Bank in the principal sum of approximately $455,000.

MKDR and Le Sannom entered into a lease agreement dated September 1, 1987 (the "1987 Lease"), which entitled MKDR to occupy the basement, ground and second floor of the Building (the "Leased Space"). In return, MKDR was to pay to Le Sannom: (1) base rent in the amount of $150,-000 *per annum,* $12,500 *per month;* and (2) various additional charges for real estate tax, water and sewer charges, *etc.* R. 8717 at 63.

MKDR challenges the validity of the 1987 Lease on the grounds that it "never had a valid inception". R. 8175 at 18.

> The 1987 lease was executed solely upon the request of the prior controlling person of the realty, Irving Goldstein [47th Street's principal] and Joseph Nathanson, who stated that Mr. Nathanson needed a backdated document to obtain parallel financing from the Israel Discount Bank.

*Id.* at 19. It is MKDR's position that the 1987 Lease was modified by a January 10, 1991 letter agreement between MKDR and Le Sannom which provided that MKDR could use and occupy the Leased Space from January 10, 1991 through July 1, 1994 for an annual payment of $1.00 *per annum* (the "1987 Lease Modification"). In the event that MKDR's average monthly gross revenue exceeded $95,000 for any calendar year, MKDR would pay market rate rent for the following year. R. 8715 at 26.

MKDR also occupied the third, sixth, and half of the fifth floor of the Building (the "Squatter Space"). It is the Appellants'

1. 11 U.S.C. § 101 *et seq.* (1984) (the "Bankruptcy Code").

2. Within the context of its bankruptcy proceedings, 47th Street is challenging MKDR's ownership of Le Sannom on the grounds that Mr. Fischer, MKDR's principal, fraudulently caused 47th Street to convey ownership of the Le Sannom stock to Mr. Fischer.

3. Appellees cite the record on appeal in both dkt. no. 92 Civ. 8715 and dkt. no. 92 Civ. 8717, a related appeal from an order of the bankruptcy court modifying the automatic stay. All references to the record on appeal in dkt. no. 92 Civ. 8717 will be referenced as R. 8717 at ___.

position that there is no valid lease agreement which entitles MKDR to occupy the Squatter Space. MKDR maintains that by letter dated January 10, 1991, Le Sannom granted MKDR use and occupancy of the Squatter Space in consideration for MKDR's renovation of the Squatter Space (the "Squatter Space Lease"). R. 8715 at 25.

In September 1991, Joseph Nathanson sued to foreclose on the Second Mortgage in the Supreme Court of the State of New York. R. 8717 at 65. By Order dated October 16, 1991, Arthur B. Levine was appointed receiver (the "Receiver") by the state court pursuant to NYCPLR § 6401, NYRPL § 254(10) and relevant provisions of the Second Mortgage. R. 8717 at 65. The Receiver was charged with the following responsibilities: (1) collection of rents currently due or which become owing; (2) establishment of a fair and reasonable market rent for use and occupation of the Building; (3) institution and prosecution of legal proceedings necessary for the protection of the Building; (4) maintenance of the Building; and (5) payment of all taxes *etc.* *Id.*

By Notice of Removal dated April 10, 1992, the state foreclosure action instituted by Nathanson against Le Sannom was removed to the United States Bankruptcy Court as an adversary proceeding within the chapter 11 case of 47th Street. The appointment of the Receiver has been continued by the Bankruptcy Court. *See* Appellees' Designation of Additional Items pursuant to Fed.R.Bankr.P. 8006 dated December 3, 1992 at Exhibit E; Appellees' Designation of Items Pursuant to Fed. R.Bankr.P. 8006 No. 6.

The Receiver then commenced a state court summary non-payment proceeding seeking to evict MKDR from the Leased Space (the "Lease Space Action"). After a trial, the state court granted the Receiver a final judgment against MKDR in the amount of $100,000 for MKDR's non-payment of rent from January 1992 through August 1992.[4]

The Receiver commenced separate litigation against MKDR seeking $75,000 for the use and occupancy of the Squatter Space from January through May 1992 (the "Squatter Space Action"). At the completion of a bench trial, the state court issued a final judgment of possession in favor of the Receiver dated June 4, 1992.[5] By reason of the issuance of the final judgment of possession the trial court scheduled a use and occupancy hearing which was to commence on June 23, 1992, and then was adjourned until July 7, 1992 for a continued hearing. By Notice of Motion dated June 19, 1992, MKDR moved in the Appellate Term for an order staying enforcement of the final judgment in the Squatter Space Action pending appeal. By Order dated June 30, 1992, the Appellate Term granted a conditional stay.

On August 5, 1992, MKDR filed for protection under chapter 11 of the Bankruptcy Code. Because MKDR was not paying post-petition rent as required under section 365(d) of the Bankruptcy Code, by Order dated October 28, 1992, the bankruptcy court lifted the automatic stay, permitting the Receiver to pursue all enforcement and state court remedies with respect to the Leased Space Action and the Squatter Space Action.

---

**4.** Because the order of final judgment was entered two days after MKDR filed for protection under chapter 11 of the Bankruptcy Code, the bankruptcy court by decision and order ruled that the final judgment was null and void because it violated section 362 of the Bankruptcy Code. By order dated October 18, 1992, the bankruptcy court lifted the automatic stay as to the Receiver's prosecution of the Leased Space Action. The Receiver then applied for, and was granted, another final judgment by the state court.

**5.** MKDR appealed this decision to the Appellate Term. By order dated January 27, 1993, the

Appellate Term reversed and remanded the Squatter Space Action for a new trial. The basis for the remand is that the trial court should have formally received the Squatter Space Lease into evidence before it ruled that it was not authentic or was fraudulently created for the trial. The Receiver has moved to reargue the Order, or in the alternative, to appeal to the Supreme Court of New York, Appellate Division First Department, on the grounds that the failure to enter the letter into evidence was harmless error.

The Receiver then moved to lift the stay of execution in the Squatter Space Action. By Order dated October 20, 1992, the Appellate Term lifted the stay. The trial court then held a hearing and set the use and occupancy rate for the Squatter Space at $8,437.50 per month and directed MKDR to pay six months use and occupancy from June through November 1992, totalling $50,625.

Due to MKDR's repeated failure to pay pre- and post-petition rent and its failure to pay the judgment entered in either the Leased Space Action or the Squatter Space Action, the bankruptcy court by Order dated November 5, 1992 lifted the automatic stay enabling the United States Marshall to evict MKDR from the Leased Space and from the Squatter Space in accordance with the final judgments entered in the state court actions. The Receiver was put in possession of the Leased Space on November 20, 1992 and was put in possession of the Squatter Space on December 18, 1992.

The Receiver then commenced a second summary proceeding against MKDR in the Civil Court of the City of New York for failure to pay post-petition rent during the months of September through November 1992. A final judgment in favor of the Receiver in the amount of $36,500 was entered on January 6, 1993 (the "Second Leased Space Action").

MKDR then moved in bankruptcy court to assume the 1987 Lease Modification and the Squatter Space Lease. By order dated November 3, 1992, the Bankruptcy Court adjourned this motion on the condition that MKDR pay $35,483.87 (the post-petition rent due under the terms of the 1987 Lease) prior to the hearing on the motion to assume. R. 8715 at 4. In the event that payment was not received, the motion to assume would be deemed denied and the 1987 Lease would be deemed rejected. *Id.* at 5. Upon rejection of the 1987 Lease, MKDR was ordered to vacate the Leased Space. *Id.*

*Issue Presented*

By motion, MKDR moved to assume the purported unexpired leases which the state court had previously determined were invalid. Therefore, the question before this Court is whether MKDR could use the forum of the bankruptcy court to collaterally attack the state court findings or whether the state court findings are *res judicata* as to the validity of the lease agreements.

*Discussion*

A. *Res Judicata*

■ Federal courts are to give the same full faith and credit to decisions of state courts as courts within that state would give the decision. 28 U.S.C. § 1768, *see Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the state from which the judgments emerged would do so...."); *Rameau v. New York State Dept. of Health,* 741 F.Supp. 68, 70 (S.D.N.Y.1990) ("The preclusive effect of a New York State Court judgment in a subsequent federal action is determined in accordance with New York law.")

■ A judgment of the Civil Court is given *res judicata* effect by New York State Courts. *Ruse v. Inta–Boro Two-Way Radio Taxi Assoc. Inc.,* 166 A.D.2d 641, 561 N.Y.S.2d 70, 71 (2d Dep't.1990); *see, also, Gilberg v. Barbieri,* 53 N.Y.2d 285, 291, 423 N.E.2d 807, 813, 441 N.Y.S.2d 49, 55 (1981); *Gramatan Home Investors Corp. v. Lopez,* 46 N.Y.2d 481, 386 N.E.2d 1328, 414 N.Y.S.2d 308 (1979); *Babigan v. Wachtler,* 181 A.D.2d 640, 582 N.Y.S.2d 14 (1st Dep't.1992); *Spampinato v. M. Berger & Co.,* 226 F.2d 742 (2d Cir.1955) (holding that the district court properly gave preclusive effect to the prior judgment of the Municipal Court, the predecessor to the Civil Court). The only exception to this general rule involves judgments of the Small Claims division[6] of the New York City Civil Court.

---

**6.** A small claim is "any cause of action for money only not in excess of two thousand dollars exclusive of interest and costs." N.Y. City Civ.Ct. Act § 1801.

428

A judgment under [the small claims article] may be pleaded as res judicata only as to the amount involved in the particular action and shall not otherwise be deemed an adjudication of any fact at issue or found therein in any action or court.

N.Y. City Civ.Ct. Act § 1808. However, decisions of the small claims division constitute *res judicata* so as to bar subsequent actions involving the same matter. *Rosen v. Parking Garage, Inc.*, 40 Misc.2d 178, 242 N.Y.S.2d 677 (Civ.Ct.1963), *see also, Chang v. Chiariello*, 114 Misc.2d 186, 450 N.Y.S.2d 993 (Civ.Ct.1982). None of the prior proceedings in this action were before the small claims division of the Civil Court.

■ The core concept of *res judicata* is that a valid final judgment bars further actions between the parties on the same cause of action. *Matter of Reilly v. Reid*, 45 N.Y.2d 24, 27, 379 N.E.2d 172, 175, 407 N.Y.S.2d 645, 648 (N.Y.1978). If the same "gravamen of ... wrong" is at issue, the subsequent action is barred. *Id.* 379 N.E.2d at 175, 407 N.Y.S.2d at 648. As stated by Judge Cardozo:

A judgment in one action is exclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights established by the first.

*Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp.*, 250 N.Y. 304, 306–307, 165 N.E. 456, 458–459 (1929).

■ New York courts have since adopted a more pragmatic approach, the "transactional analysis test," to the doctrine of *res judicata*. Subsequent claims are barred if they are "coterminous with the transaction or series of transactions from which earlier claims arose." *Couri v. Westchester County Club, Inc.*, 186 A.D.2d 715, 589 N.Y.S.2d 494, 495 (2d Dep't.1992), *quoting, Smith v. Russell Sage Coll.*, 54 N.Y.2d 185, 192–193, 429 N.E.2d 746, 753–754, 445 N.Y.S.2d 68, 75–76 (1981). This is true regardless of a variation of facts alleged, legal theories asserted or relief

sought. *Id.; see also Dep't of Housing Preservation and Dev. v. Deraci*, 594 N.Y.S.2d 574 (Sup.Ct.1992).

■ Under either formulation of the doctrine of *res judicata*, the judgments of the state court in the Leased Space Action, the Squatter Space Action, and the Second Leased Space Action, serve as *res judicata* as to the validity of the 1987 Lease, the 1987 Lease Modification and the Squatter Space Lease. In the Leased Space Action and the Second Leased Space Action, MKDR had a full and fair opportunity to present evidence to the state court concerning the validity of the 1987 Lease and to present evidence that the 1987 Lease Modification was a valid binding agreement controlling the relationship between the parties. These arguments were expressly rejected by the state court.

■ The related doctrine of collateral estoppel holds "that issues of law and questions of fact necessarily decided by a court of competent jurisdiction remain binding upon the parties and those in privity with them in all subsequent litigation in which the same issues are material." *O'Connor v. G & R Packing Co.*, 74 A.D.2d 37, 44, 426 N.Y.S.2d 557, 562 (2d Dep't.1980), *aff'd*, 53 N.Y.2d 278, 423 N.E.2d 397, 440 N.Y.S.2d 920 (1981), *reargument denied*, 54 N.Y.2d 832, 427 N.E.2d 1192, 443 N.Y.S.2d 1032 (1981). In order for collateral estoppel to be invoked, two elements must be demonstrated: (1) there must be an issue of identity necessarily decided in the previous action which is decisive in the present action; and (2) there must have been a full and fair opportunity to contest the decision now said to be controlling. *Schwartz v. Public Administrator of County of Bronx*, 24 N.Y.2d 65, 71, 246 N.E.2d 725, 731, 298 N.Y.S.2d 955, 961 (1969).

■ MKDR is also barred from relitigating the issues raised in the three prior state court actions by the doctrine of collateral estoppel. The issue presented in three prior state court actions was the validity of the 1987 Lease, the 1987 Lease Modification and the Squatter Space Lease. Also at

issue in the prior litigation was the right of MKDR to occupy both the Leased Space and the Squatter Space. Both these questions were necessarily decided by the prior litigation and are controlling in the present appeal. Additionally, MKDR had the right and ability to appeal these decisions and has in fact appealed the final judgment entered in the Squatter Space Action.

B. *Assumption of the Unexpired Lease*

■ An unexpired non-residential lease is considered to be property of the estate. 11 U.S.C. § 541(a)(1).[7] Under section 365 of the Bankruptcy Code a debtor may either assume or reject executory contracts or unexpired leases. 11 U.S.C. § 365(a). Except, a debtor may not assume an executory contract or unexpired lease unless at the time of assumption the debtor:

(A) cures, or provides adequate assurance that the trustee will promptly cure, such [lease] default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

■ To date, MKDR has made no post-petition rent payments in accord with the terms of the 1987 Lease. R. 8715 at 142. Nor has MKDR provided adequate assurances that it will make such payments. *Id.* Such post-petition payments or adequate assurances are prerequisites to assumption of an unexpired lease. 11 U.S.C. § 365(b). Because MKDR has failed to satisfy the statutory prerequisites to the assumption of an unexpired lease, the bankruptcy court was correct in adjourning the hearing in order to give MKDR the opportunity to satisfy these requirements.

■ Under the Bankruptcy Code a debtor must move to assume an unexpired lease within 60 days after the date of the order of relief (or within a time frame set by the court) or the lease shall be deemed rejected. 11 U.S.C. § 365(d)(4); *see In re Fosko Markets, Inc.,* 74 B.R. 384 (Bankr. S.D.N.Y.1987). If a debtor is in default of an unexpired lease, it may not assume the lease without promptly curing the default or providing adequate assurances. 11 U.S.C., § 365(b)(1). If a debtor fails to satisfy these conditions, the lease is deemed rejected and the debtor must surrender the premises. *In re Flexipak, Inc.,* 49 B.R. 641 (S.D.N.Y.1985).

■ MKDR sought to assume the 1987 Lease Modification and the Squatter Space Lease. Both of these agreements were held to be invalid by the New York State Courts. Therefore, the only valid lease which MKDR could seek to assume would be the 1987 Lease. Because MKDR had failed to cure the defaults or provide adequate assurances within the statutory time-frame, the bankruptcy court was correct to deem the 1987 Lease rejected.

*Conclusion*

The order of the bankruptcy court is affirmed.

SO ORDERED:

---

7. Section 541 of the Bankruptcy Code provides in pertinent part:
    (a) The commencement of a case under ... this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) [A]ll legal and equitable interests of the debtor in property as of the commencement of the case.
11 U.S.C. § 541.