**MANHATTAN KING DAVID RESTAURANT INC. d/b/a David's Harp, Appellants,**

v.

**Arthur B. LEVINE, as Receiver, Appellee.**

No. 92 Civ. 8717 (LAP).

United States District Court, S.D. New York.

Dec. 14, 1993.

Ernest H. Hammer, New York City, for appellants.

## OPINION AND ORDER

PRESKA, District Judge.

This is an appeal from an order of the bankruptcy court (Blackshear, J.) dated September 23, 1992 which, *inter alia*, vacated the automatic stay with respect to the squatter space; modified the automatic stay with respect to the leased space; and directed the debtor to immediately pay to the receiver all post-petition rent and related charges. For the reasons stated below, the appeal is denied and the order of the bankruptcy court is affirmed.

### Background

This is one of a number of appeals arising from the related bankruptcy proceedings of Manhattan King David Restaurant Corp. ("MKDR"), Le Sannom Building Corp. ("Le Sannom") and 47th Street Photo, Inc. ("47th Street"). Although familiarity with this

Court's decisions in *Manhattan King David Restaurant Corp. v. Levine,* 154 B.R. 423 (S.D.N.Y.1993) and *Le Sannom Building Corp. v. Nathanson,* No. 92 Civ. 8716, 1993 WL 330442 (Preska, J., Aug. 23, 1993) is presumed, a summary of the relevant facts follows.

MKDR purchased all the stock of its codebtor, Le Sannom Building Corp. ("Le Sannom") from 47th St. Photo, Inc. on December 29, 1989.[1] Record on Appeal from an Order of the Bankruptcy Court Granting an Application by Arthur B. Levine, as Receiver, to Vacate the Automatic Stay at 143 (hereinafter "R. 8717 at—"). Le Sannom is the fee owner of a seven-story commercial loft building located at 148–50 West 46th Street, New York, New York (the "Building").

On October 12, 1988, Le Sannom executed a mortgage agreement (the "Second Mortgage") and a promissory note (the "Note") pursuant to which Le Sannom agreed to borrow approximately $1,000,000 from Joseph K. Nathanson ("Nathanson") secured by a second mortgage on the Building. Of that amount, Le Sannom requested and received a total of $850,000 from the mortgagee. R. 8717 at 146–154. Subsequently, a corporation wholly owned by Nathanson, Considerate Discount Corp., purchased the outstanding first mortgage on the Building from the Anchor Savings Bank in the principal sum of approximately $455,000.

MKDR and Le Sannom entered into a lease agreement dated September 1, 1987 (the "1987 Lease"), which entitled MKDR to occupy the basement, ground and second floor of the Building (the "Leased Space"). In return, MKDR was to pay to Le Sannom: (1) base rent in the amount of $150,000 per annum, $12,500 per month; and (2) various additional charges for real estate tax, water and sewer charges, *etc.* R. 8717 at 63. MKDR also occupied the third, sixth, and half of the fifth floor of the Building (the "Squatter Space").

In September 1991, Joseph Nathanson sued to foreclose on the Second Mortgage in

---

1. Within the context of its bankruptcy proceedings, 47th Street is challenging MKDR's ownership of Le Sannom on the grounds that Mr. Fischer, MKDR's principal, fraudulently had 47th Street convey ownership of the Le Sannom stock to Mr. Fischer.

the Supreme Court of the State of New York. R. 8717 at 65. By order dated October 16, 1991, Arthur B. Levine was appointed receiver (the "Receiver") by the state court pursuant to New York Civ.Prac.L. & R. § 6401, New York Real Prop.Law § 254(10) and relevant provisions of the Second Mortgage.[2] R. 8717 at 65. The Receiver was charged with the following responsibilities: (1) collection of rents currently due or which become owing; (2) establishment of a fair and reasonable market rent for use and occupation of the Building; (3) institution and prosecution of legal proceedings necessary for the protection of the Building; (4) maintenance of the Building; and (5) payment of all taxes, etc. Id.

By Notice of Removal dated April 10, 1992, the state foreclosure action instituted by Nathanson against Le Sannom was removed to the United States Bankruptcy Court as an adversary proceeding within the Chapter 11 proceedings relating to 47th Street. The appointment of the Receiver was continued by the bankruptcy court. See Appellees' Designation of Additional Items pursuant to Fed.R.Bankr.P. 8006 dated December 3, 1992 at Exhibit E; Appellees' Designation of Items Pursuant to Fed.R.Bankr.P. 8006 No. 6.

The Receiver then commenced a state court summary non-payment proceeding seeking to evict MKDR from the Leased Space (the "Leased Space Action"). After a trial, the state court granted the Receiver a final judgment against MKDR in the amount of $100,000 for MKDR's non-payment of rent from January 1992 through August 1992.[3]

The Receiver commenced separate litigation against MKDR seeking $75,000 for the use and occupancy of the Squatter Space from January through May 1992 (the "Squatter Space Action"). At the completion of a bench trial, the state court issued a final judgment of possession in favor of the Receiver dated June 4, 1992.[4] By reason of the issuance of the final judgment of possession the trial court scheduled a use and occupancy hearing which was to commence on June 23, 1992, and then adjourned for a continued hearing until July 7, 1992. By Notice of Motion dated June 19, 1992, MKDR moved in the Appellate Term for an order staying enforcement of the final judgment in the Squatter Space Action pending appeal. By order dated June 30, 1992, the Appellate Term granted a conditional stay.

On August 5, 1992, MKDR filed for protection under Chapter 11 of the Bankruptcy Code. Because MKDR was not paying post-petition rent as required under section 365(d) of the Bankruptcy Code, by order dated October 28, 1992, the bankruptcy court lifted the automatic stay, permitting the Receiver to pursue all enforcement and state court remedies with respect to the Leased Space Action and the Squatter Space Action.

The Receiver then moved in the Appellate Term to lift the stay of execution in the Squatter Space Action. By order dated October 20, 1992, the Appellate Term lifted the stay. The trial court then held a hearing and set the use and occupancy rate for the Squatter Space at $8,437.50 per month and directed MKDR to pay six months use and occu-

2. A receiver was appointed in this instance because normally the landlord, and not the mortgagee, would institute legal proceedings against a delinquent or squatting tenant. In this case, the difficulty is that the landlord is a subsidiary corporation of the delinquent/squatting tenant.

3. Because the order of final judgment was entered two days after MKDR filed for protection under chapter 11 of the Bankruptcy Code, the bankruptcy court by decision and order ruled that the final judgment was null and void because it violated section 362 of the Bankruptcy Code. By order dated October 18, 1992, the bankruptcy court lifted the automatic stay as to the Receiver's prosecution of the Leased Space Action. The Receiver then applied for, and was

granted, another final judgment by the state court.

4. MKDR appealed this decision to the Appellate Term. By order dated January 27, 1993, the Appellate Term reversed and remanded the Squatter Space Action for a new trial. The basis for the remand is that the trial court should have formally received the Squatter Space Lease into evidence before it ruled that it was not authentic or was fraudulently created for the trial. The Receiver has moved to reargue the Order, or in the alternative, to appeal to the Supreme Court of New York, Appellate Division First Department, on the grounds that the failure to enter the letter into evidence was harmless error.

pancy from June through November 1992, totalling $50,625.

Due to MKDR's repeated failure to pay pre- and post-petition rent and its failure to pay the judgment entered in either the Leased Space Action or the Squatter Space Action, the bankruptcy court by order dated November 5, 1992 lifted the automatic stay enabling the United States Marshall to evict MKDR from the Leased Space and from the Squatter Space in accordance with the final judgments entered in the state court actions. The Receiver was put in possession of the Leased Space on November 20, 1992 and was put in possession of the Squatter Space on December 18, 1992.

The Receiver then commenced a second summary proceeding against MKDR in the Civil Court of the City of New York for failure to pay post-petition rent during the months of September through November 1992. Final judgment in favor of the Receiver in the amount of $36,500 was entered on January 6, 1993 (the "Second Leased Space Action").

## Discussion

A. Vacating of the Automatic Stay as to the Squatter Space

■ The Appellant argues that the bankruptcy court erred in granting the Receiver's motion to lift the automatic stay as to the Squatter Space because it should not have granted *res judicata* effect to the New York City Civil Court's decision that the Squatter Space was not leased by the debtor.

The Appellant is directed to this Court's opinion in *Manhattan King David Restaurant v. Levine*, 154 B.R. 423 (S.D.N.Y.1993) and the cases cited therein, where it was determined that a judgment of the Civil Court is given *res judicata* effect by the New York State courts and thus must be given full faith and credit by the federal courts.

The bankruptcy court properly gave *res judicata* effect to the state court judgment that the Squatter Space was not a part of the 1987 Lease and properly found that the debtor was collaterally estopped from relitigating the issues raised in the prior state actions. The Squatter Space thus cannot be consid-

ered property of the debtor's estate under 11 U.S.C. § 541(a) and is accordingly not subject to the automatic stay. For these reasons, the bankruptcy court's order vacating the automatic stay as to the non-leased premises is affirmed.

B. Modification of the Stay as to the Leased Premises

The Appellant argues that the bankruptcy court erred in granting the Receiver's motion to modify the automatic stay because, *inter alia*, it improperly gave *res judicata* effect to the state Leased Space Action; MKDR has the rights of a mortgagor in possession and thus cannot be evicted; and because there was no meritorious justification for the modification.

The bankruptcy court ordered that the automatic stay be modified with respect to the Leased Space

"to allow the Receiver, *inter alia*, to exercise any and all of its powers pursuant to the State Court Receiver Order including, but not limited to, the pursuit and enforcement of all landlord tenant actions, including ... the summary non-payment, commercial holdover and eviction proceedings and the re-leasing of any space in the Building." R. 8717 at 5.

1. *Res Judicata*

The Leased Space Action resulted in judgments of possession and money issued in favor of the Receiver. Brief for Appellee at 9. MKDR filed a Chapter 11 bankruptcy petition before these judgments could be executed upon. For the reasons set forth in *Manhattan King David Restaurant v. Levine, supra*, the bankruptcy court properly gave *res judicata* effect to the Civil Court's determination that MKDR was a tenant in possession and that the Receiver had the right to, *inter alia*, evict MKDR.

2. Second Mortgage

■ Furthermore, accepting *arguendo* that the Appellant is a mortgagor in possession, the Second Mortgage at paragraph 13 expressly authorizes the Receiver, upon default of the mortgagor, to evict the mortga-

gor by summary proceeding. R. 8717 at 153. A mortgage agreement that authorizes the Receiver to maintain eviction proceedings against the mortgagor will be enforced. *Holmes v. Gravenhorst,* 263 N.Y. 148, 188 N.E. 285 (1933); *Third Madison Realty Assoc. v. Ramapo Racquetball Assoc.,* 123 A.D.2d 682, 507 N.Y.S.2d 51, 52 (1986).

### 3. Justification

The Appellant also argues that there was no justification for modifying the stay. The bankruptcy court did not abuse its discretion in finding that the Receiver demonstrated cause for lifting the stay pursuant to 11 U.S.C. § 362(d).

Section 362 of the Bankruptcy Code provides in pertinent part:

"(d) On request of a party in interest and after a hearing, the court shall grant relief from the stay ... (1) for cause, including lack of adequate protection of an interest in property of such party in interest...."

11 U.S.C. § 362(d)(1). The term "cause" is not defined in the Bankruptcy Code, and whether cause exists should be determined on a case by case basis. *In re Sonnax Industries,* 907 F.2d 1280, 1286 (2d Cir.1990). The decision of whether to lift the stay is committed to the sound discretion of the bankruptcy judge and may be overturned only upon a showing of abuse of discretion. *Id.*

Numerous cases have found a lack of good faith in filing a bankruptcy petition to constitute "cause" for lifting the stay. *In re Sonnax Industries, supra,* 907 F.2d at 1287; *In re Little Creek Development,* 779 F.2d 1068, 1072 (5th Cir.1986) (citing cases at 1072 n. 2). Bad faith under Section 362 is often found upon a showing that a single asset debtor or a non-going concern filed with the intent to gain relief from a state court action. *Sonnax,* 907 F.2d at 1287.

In *Little Creek,* the court noted that a typical bad faith filing situation is where "the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford." 779 F.2d at 1073. Here, the sole asset in issue is the seven-story commercial loft building. Judgment was obtained against MKDR in state court, and MKDR was unable to post a bond. October 14, 1992 Transcript of Adj. hearing re: Order to vacate Order lifting the stay originally heard on 9/23/92, at 46. Furthermore, in its Local Rule 52 Statement, the Appellant specifically states that the fact and circumstance leading to its filing for bankruptcy protection is the state court judgment of possession obtained against it. R. 8717 at 75–6. On these facts, the bankruptcy court did not abuse its discretion in finding a bad faith filing.

Also in the context of discussing bad faith filings, the court in *Little Creek, supra,* stated that resort to the protection of the bankruptcy laws is improper where, *inter alia,* there is no hope of rehabilitation. 779 F.2d at 1073. Here, MKDR failed to pay rent or related charges for nine months before filing, amounting to $112,500 in pre-petition arrears, and MKDR has failed to pay any post-petition rent or related charges. R. 8717 at 54–56. It was not an abuse of discretion for the bankruptcy court in this case to find that the MKDR was unable to demonstrate an ability to raise sufficient funds to reorganize.

### C. Compelling Post–Petition Rent and Related Charges for the Leased Space

The Appellant argues that the bankruptcy court erred in ordering payment of post-petition rent because the 1987 Lease was not meant to create a binding obligation, and because the claim for interim rent, solely an administrative expense, was not entitled to priority in payment.

The Appellant is directed to this Court's opinion in *Manhattan King David Restaurant v. Levine,* 154 B.R. 423 (1993), where it was decided that the judgments of the state court in the various actions serve as *res judicata* as to the validity of the 1987 Lease. MKDR is barred from relitigating the issue of the validity of the 1987 Lease raised in the three prior state court actions and in a prior appeal before this Court, by the doctrine of collateral estoppel.

Furthermore, the bankruptcy court properly ordered the Appellant to pay post-peti-

tion rent pursuant to 11 U.S.C. § 365(d)(3). Section 365(d)(3) requires a debtor in possession, pending assumption or rejection of a nonresidential lease, to "timely perform all the obligations ... arising from and after the order for relief...."[5] 11 U.S.C. § 365(d)(3). *See also In re R.H. Macy & Co. et al.,* 152 B.R. 869, 872 (S.D.N.Y.1993) (debtor in possession required to timely perform all the obligations arising from and after the order for relief) and *In re Musikahn Corp.,* 57 B.R. 942, 944 (E.D.N.Y.1986) ("clear language of § 365(d)(3) specifies that the [debtor] abide by his post-petition rent obligations").

*Conclusion*

The September 23, 1992 order of the bankruptcy court is affirmed.

SO ORDERED.

5. In the May 19, 1993 decision, this Court affirmed the bankruptcy court's decision that because MKDR defaulted on the post-petition rent payments and failed to provide adequate assurances that it would make such payments, *MKDR* could not assume the Lease, and the Lease was deemed rejected. *MKDR,* 154 B.R. 423.